Randall Thomas McARTY *v.* STATE of Arkansas

CR 93-1071                                    871 S.W.2d 346

Supreme Court of Arkansas
Opinion delivered February 21, 1994

*McArthur & Finkelstein*, by: *William C. McArthur*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant Randall Thomas McArty was charged with the first degree murder of Teresa Chamberlain. McArty was tried, convicted and sentenced to life imprisonment in the Arkansas Department of Correction. Two points for reversal are argued: it was error to allow the state to question a medical expert on matters beyond his experience and the evidence of guilt was not sufficient to support the verdict. As we cannot sustain the arguments, we affirm the judgment entered pursuant to the verdict.

The facts, related from the state's position, are these: At about 10:30 p.m., July 31, 1992, officers of the Clark County Sheriff's Department responded to an emergency at the Gurdon home which Randy McArty shared with Teresa Chamberlain. McArty had gone to a neighbor and the sheriff was called. When an officer asked McArty what the problem was, he answered, "I shot her. I shot her."

Inside they found the body of Teresa Chamberlain on the kitchen floor with a gaping wound in the left chest. She was lying just inside a door leading to the carport. A butcher knife was in her right hand. Buckshot pellets were embedded in the wall opposite the door. In the carport was a vehicle with the lights on. A .12 gauge shotgun and a box containing one shell were in the car. One expended shell was in the gun and one was in McArty's pocket.

Daniel Blasingame testified that he had been staying at the McArty residence for several days working on Teresa Chamberlain's car. On the afternoon of July 31 he and Teresa had gotten beer and tequila and had been driving around, using Randy's car. They had stopped at Lennie Richard's house when Randy arrived. There was an argument and Randy left. Blasingame and Mrs. Chamberlain came home later and Blasingame went to bed in a back room. Teresa went to bed in the bedroom and her ten-year-

old daughter, Amy, slept on a couch. Blasingame awoke to hear Teresa call for help. He heard a shot. When he came into the kitchen Teresa was lying on the floor and Randy was in the doorway holding the shotgun. Randy said, "I'm going to call an ambulance" and went next door.

The state's witnesses included Marcus Bragg, an acquaintance of Randy McArty from school days, who testified that he met McArty by chance on July 31, 1992. In their conversation McArty told him he wanted to kill this woman, but later said he wouldn't bother her. The next day Bragg heard she had been killed.

James Dillard testified that on the late afternoon of July 31, 1992, Randy McArty came into his store and bought five shotgun shells, No. 1 buckshot.

Tommy McMillan, a neighbor, testified that Randy came to his house that night, hollering that he had shot his girlfriend, that she had a big knife and was going to stab him. He heard Amy say her mother was after Randy with a knife and Randy shot her.

Randy McArty testified that he met Teresa in January of that year and she moved in with him four or five weeks later. He described episodes of physical violence between them including a time when Teresa had scalded him with the contents of a crockpot.

When he found Teresa and Dan at Lennie Richard's house he asked Teresa for the keys to his car and had to take them from her. As he was preparing to leave, Teresa cursed him and tried to strike him through the window. When he got home about 10:00 p.m. the house was dark. He switched on the light in the kitchen and Teresa was standing there. The argument resumed and Teresa tried to get at him with the knife. He raised the gun as she turned and it went off. She called to Dan to help her and Randy left to call an ambulance.

There was other proof from which varying inferences could be drawn. The state offered evidence suggesting that the knife was placed in Teresa's hand afterwards and that the shot was fired as Teresa was opening the kitchen door. Blasingame testified he saw no knife. These were issues for the jury.

The state called physician William Quinton Sturner, chief medical examiner of Arkansas, who performed the autopsy. The pellets entered her upper left chest at an angle, penetrated the aorta, and emerged behind the upper right arm and back. Dr. Sturner was asked about the trajectory of the pellets after leaving the body. Defense counsel objected on the grounds that Dr. Sturner was not an arms expert and was not qualified to say what would happen to the pellets after leaving the body. The objection was overruled and Dr. Sturner stated that the pellets "went out separated."

Citing *Wilburn* v. *State* 289 Ark. 224, 711 S.W.2d 760 (1986), McArty argues on appeal that the test for expert testimony is whether the witness has knowledge of the subject at hand which is beyond that of ordinary people. Appellant concedes that in *Farrell* v. *State*, 305 Ark. 54, 810 S.W.2d 29 (2991), we found no abuse of discretion by the trial court in allowing a nonexpert to testify concerning a firearm, but, he argues, in contrast to this case, the witness in *Farrell* had extensive experience with firearms.

■ First, we regard the issue as largely abstract, as appellant has not shown us how the pattern of the emerging pellets had any substantial impact on the trial. A.R.E. 103(d). Second, we think common experience would suggest the likelihood of some dispersion of shotgun pellets, even buckshot, entering the body at a slight angle near the upper chest and emerging behind the upper arm. The sternum and shoulder blade, even the soft tissues and cartilage, could hardly be expected to have no effect on the trajectory of shotgun pellets. Third, issues of this kind fall clearly within the discretion of the trial court and no abuse of that discretion is evident here. *White* v. *State*, 303 Ark. 30, 792 S.W.2d 867 (1990).

■ Turning to the sufficiency of the evidence, we need refer to only three segments of the proof: The testimony of Marcus Bragg that McArty spoke of killing the woman he was living with; the testimony of James Dillard that McArty purchased five shotgun shells around five o'clock that afternoon; and the fact that McArty had the loaded shotgun at his side when he entered the house. Obviously it cannot be said that evidence of intent was so lacking that a directed verdict was called for. *Taylor* v. *State*, 303 Ark. 587, 799 S.W.2d 519 (1990).

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and the objections have all been abstracted and certified by the state. There are no other rulings adverse to the appellant which constituted prejudicial error.

For the reasons stated, the arguments presented on appeal are denied and the judgment of conviction is affirmed.

HOLT, C.J., not participating.