John Phillip PONDER *v.* STATE of Arkansas

96-1269 953 S.W.2d 555

Supreme Court of Arkansas
Opinion delivered October 2, 1997

*Depper Law Firm,* by: *Robert L. Depper, Jr.,* for appellant. *Winston Bryant,* Att'y Gen., by: *Vada Berger,* Asst. Att'y Gen., for appellee.

Donald L. Corbin, Justice. Appellant John Phillip Ponder appeals the order of the Union County Circuit Court denying his motion to transfer the charge against him to juvenile court. We have jurisdiction of this interlocutory appeal. Ark. Sup. Ct. R. 1-2(a)(11); Ark. Code Ann. § 9-27-318(h) (Supp. 1995). We cannot say the trial court's decision to retain jurisdiction of the case was clearly erroneous, and therefore we affirm.

Pursuant to the prosecutor's discretion in section 9-27-318(b)(1), Appellant was charged in circuit court with one count of capital murder for the death of seventy-five-year-old Violet Willett. The information alleged that Appellant was born February 6, 1981, and that the crimes occurred on June 21, 1995. Appellant was thus fourteen years old when the crime was committed.

Appellant filed a motion to transfer the charge to juvenile court. During the April 1, 1996 hearing, Deputy Michael Fife, of the Union County Sheriff's Department, described the crime scene to the court and testified as to portions of two statements given by Appellant to police. Appellant admitted to entering Violet Willett's home two times on June 21, 1995, with the intention of taking items. While he was there the second time, he took a watch, a necklace, and some guns. After Appellant had remained at the home for approximately one hour, Willett returned. As she entered her home, Appellant stated that he hid next to a chair.

As to what happened after Willett returned and the actual cause of her death, Appellant's two statements differ. In his first statement, he stated that he stood up with Willett's .22 caliber rifle in his hands. He indicated that he had previously unloaded the gun and then reloaded it with different ammunition. He then told Willett to give him her truck keys, when the gun went off. In the second statement, however, he contended that the gun went off when he placed the barrel of the rifle on a wall partition, striking Willett and causing her death. Appellant stated in both interviews that he then threw down the gun and another shot fired. He admitted to looking in Willett's pocket for her keys while she lay bleeding on the floor. He also took two guns and seized money from Willett's purse before driving off in her truck. After wreck-

ing the vehicle, he was found wearing the stolen watch and was charged with capital murder.

The State also provided testimony from Dr. Frank Peretti, an associate medical examiner who performed the autopsy on Willett. Dr. Peretti testified that the trajectory of the bullet went from the front part of Willett's skull to the back in a downward path. He stated that the cause of death was a gunshot wound of the head, with neck injuries.

Phillip Taylor, a juvenile probation officer, testified that Appellant had been involved in the juvenile court system three times prior to the incident. On April 26, 1994, he was involved in the unauthorized use of a vehicle in which he took a truck without permission. The victim did not wish to pursue charges, as long as restitution was paid for the damage done to the truck. On May 12, 1995, after skipping school, Appellant was charged with arson for setting fire to a wooden podium in a shower stall of the boy's locker room at Barton Middle School in El Dorado. Also in May 1995, he damaged the front and rear windshield of a vehicle owned by a school teacher at Barton Middle School. After Appellant pleaded "true" to the charges of criminal mischief and arson, the juvenile court judge ordered that Appellant be placed on six months' probation and sent to South Arkansas Youth Services Center. The present incident occurred while Appellant was waiting for an available space at the youth facility.

Appellant presented the following testimony. Joe Ogden, the director of the Central Arkansas Serious Offender Program for juveniles, testified regarding the fact that out of the twenty-four males in the program, five, between the ages of fourteen and one-half to seventeen years of age, had committed the offense of capital murder. Jan Nelson, a clinical social worker from the South Arkansas Regional Health Center, testified that her initial diagnosis of Appellant was adjustment disorder with mixed conduct and emotional features. She also stated that Appellant was not mature for his age because of his impulsiveness. On cross-examination, she stated that Appellant's age was a factor in determining that he could be rehabilitated. She admitted, however, that she could not be considered an expert in the rehabilitation of juveniles. John

Huey Ponder, Appellant's father, confirmed the incidents dealt with in juvenile court and acknowledged that he and his wife had left Appellant by himself on the day of the shooting.

After hearing all the testimony, the trial court denied the motion to transfer the case to juvenile court. In a written opinion, the court stated that "the offense charged is a serious one and was committed in a violent manner while in the process of a burglary of the victim's home." The court also noted that Appellant was on probation for arson and criminal mischief at the time of the murder, and he was therefore beyond rehabilitation in existing juvenile programs. Consequently, the court found clear and convincing evidence to retain the charge in circuit court.

■ Pursuant to section 9-27-318(f), the determination that a juvenile should be tried as an adult must be supported by clear and convincing evidence. *Butler v. State*, 324 Ark. 476, 922 S.W.2d 685 (1996). Clear and convincing evidence is defined as that degree of proof that will produce in the trier of fact a firm conviction regarding the allegation sought to be established. *Id.* The supreme court will not reverse a circuit court's denial of a juvenile transfer unless the denial was clearly erroneous. *Wilkins v. State*, 324 Ark. 60, 918 S.W.2d 702 (1996).

■ Section 9-27-318(e) provides in part the factors to be considered in a juvenile transfer hearing as follows:

> (1) The seriousness of the offense, and whether violence was employed by the juvenile in the commission of the offense;

> (2) Whether the offense is part of a repetitive pattern of adjudicated offenses which would lead to the determination that the juvenile is beyond rehabilitation under existing rehabilitation programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts; and

> (3) The prior history, character traits, mental maturity, and any other factor which reflects upon the juvenile's prospects for rehabilitation.

A circuit court is not required to give equal weight to each of these statutory factors. *Green v. State*, 323 Ark. 635, 916 S.W.2d

756 (1996). Proof need not be introduced against the juvenile on each factor. *Lammers v. State*, 324 Ark. 222, 920 S.W.2d 7 (1996).

Appellant asserts that the trial court erred in denying the motion to transfer because of the juvenile's age and his probability of rehabilitation. He also argues that the trial court erred because he contends the crime was accidental and did not involve the employment of violence. In support of this argument, he relies heavily on this court's decision in *Green*, 323 Ark. 635, 916 S.W.2d 756. The facts present in this case are distinguishable from those in *Green*, where the appellant was charged with manslaughter. Here, the evidence demonstrates that Appellant was involved in the serious offense of capital murder and that he employed a gun in committing the offense. The fact that the offense charged was serious in nature and was accomplished with the use of violence is enough to warrant a denial of transfer of Appellant's case to juvenile court. No element of violence beyond that required to commit the crime is necessary under section 9-27-318(e)(1). *Lammers*, 324 Ark. 222, 920 S.W.2d 7.

Notwithstanding the violent and serious nature of the offense, the trial court's decision is further supported by the fact that Appellant had committed two prior adjudicated offenses, approximately one month before the murder, and had been placed on juvenile probation. Where there is evidence that the current felony charges were part of a repetitive pattern of offenses, that past efforts at rehabilitation in the juvenile court system have not been successful, and that the pattern of offenses has become increasingly more serious, these factors alone prevent a holding that the trial court's ruling on the transfer motion was clearly erroneous. *Sebastian v. State*, 318 Ark. 494, 885 S.W.2d 882 (1994). Thus, the trial court did not err by concluding that Appellant was beyond rehabilitation.

Based upon the foregoing reasons, we conclude that the decision of the trial court denying Appellant's motion to transfer the charge to juvenile court is supported by clear and convincing evidence.

GLAZE and IMBER, JJ., concur.

TOM GLAZE, Justice, concurring. I concur. While I disagree with this court's attempt to distinguish *Green v. State*, 323 Ark. 635, 916 S.W.2d 756 (1996), from the present case, that is not the reason I write this concurring opinion. Rather, I address appellant's reliance on *Sanders v. State*, 326 Ark. 415, 932 S.W.2d 315 (1996), and his request for us to review his case in light of a statement in *Sanders* indicating this court's intention to reconsider its past interpretations of Ark. Code Ann. § 9-27-318 (Supp. 1995). The court in *Sanders* did state a concern that, under our current interpretation of the juvenile code, prosecuting attorneys can file a serious charge against a juvenile in circuit court and do nothing more. The *Sanders* court further said it did not intend for its earlier interpretations of the code to do away with the need for a meaningful hearing. The *Sanders* court issued a caveat that, in juvenile cases tried after *Sanders*, the court would consider anew its interpretation of the juvenile code when the issues are fully developed and briefed.

The present case is not the type the court had in mind in *Sanders*, since here a meaningful hearing was conducted. The State offered ample evidence that the crime with which Ponder was charged was serious and involved the employment of violence. In addition, the State offered evidence that the current felony charges reflected a repetitive pattern of offenses, that past efforts at rehabilitation have been unavailing, and that the pattern has become increasingly more serious.

In contrast to the case at bar, our court, in *Walker v. State*, 304 Ark. 393, 803 S.W.2d 502 (1991), affirmed the trial court's denial to transfer Walker's case to juvenile court even though the State's only argument was that its information, describing the offense charged as serious and involving violence, outweighed the lack of repetitive pattern and positive character traits which were shown by Walker at the transfer hearing. This court approved the State's use of its information, only, to affirm the trial court, and stated the following:

> While it might have been desirable and even preferable for the prosecutor to present additional evidence at the hearing to support retaining [Walker] in circuit court, we hold that the

criminal information provided a sufficient basis for the trial court's decision.

In conclusion, while this court said in *Sanders* that it would reconsider our prior interpretation of the code, its concern involved prosecuting attorneys filing serious charges against a juvenile in circuit court and offering no further proof in transfer-motion hearings. That situation does not exist here, since a meaningful hearing was held. However, when the court is again confronted with a case such as *Walker*, where the State offers nothing but an information at a hearing on a transfer motion, it will then be appropriate for this court to consider anew its ruling in *Walker* and cases like it.

IMBER, J., joins this concurrence.