BRANDON J. HARRISON, Judge
A Miller County Circuit Court jury convicted African American defendant Shelby Jamal Davis of aggravated robbery and four counts of first-degree battery. The jury also found that Davis used a firearm when committing the batteries. Davis appeals his convictions and the resulting one-hundred-year sentence, raising three points. The first is that the circuit court erred by denying his race-based Batson challenge to the State's five peremptory strikes against five separate African American venire members. We reverse on the Batson argument, making it unnecessary for us to decide the other points.
I. The Juror-Selection Process
Jury selection began on 29 January 2018. During the first phase, the court asked the potential jurors many questions, including whether they resided in Miller County or had unpardoned felony convictions. The court excused several people for cause. It then asked the potential jurors if they had either been a victim of a crime or accused of committing one. Fifteen people answered yes. None were excused for cause.
The circuit clerk then drew the names of thirty people. The court called the names in the order the clerk had randomly selected them. It asked each juror to stand when called. Defense counsel and the prosecutor questioned the jurors individually at that time and were given the opportunity to use *717 peremptory challenges (or strikes); each side had six. The process continued until the jury box was filled.
Twenty-four people were individually questioned before the jury was seated. Of the twenty-four, eight were African American. And of the twenty-four, twelve survived peremptory challenges. Three African Americans made it into the jury box. Five African American prospective jurors were eliminated by the prosecutor's peremptory strikes. Stated as percentages, the State used 83 percent of its strikes against African Americans, resulting in 62.5 percent of the eligible African Americans being excluded from serving as jurors.
Here are some details that put the jury-selection dispute in context. The first two (non-African American) venire members were seated without objection; the court excused a third juror on its own motion. The defense exercised its first peremptory strike against a non-African American woman named Lauren Glover. The prosecution exercised its first strike against Rachel Purifoy, a non-African American woman.
The prosecution used its second strike against Thomas Harris, an African American male, over Davis's Batson objection. Having found that Davis made a prima facie case for purposeful discrimination based on his race, the court required the prosecutor to provide a race-neutral reason for the peremptory challenge, as is required under Batson v. Kentucky , 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). (More will be said about Batson 's three-step process in due course.) The reason the prosecutor gave was that "Mr. Harris indicated that he knew or was aware of and was familiar with the defendant's grandfather, Mr. Davis. He is, also, the father of a child approximately the defendant's age." The third strike the State used was against an African American named Verlinda Cleveland. The prosecutor said that because Cleveland is "a single mother working with the school district," she would "tend to be sympathetic towards a young person based on [her] interactions with young people ... of the defendant's age." When he was tried, Davis was twenty-four years old. The circuit court excused Cleveland, presumably because she was a single mother who worked for the Texarkana School District.
Next was Martha Reynolds, a non-African American woman. The defense exercised a preemptory strike against Reynolds after she had said that her home had been burglarized and that the perpetrator was successfully prosecuted.
One of the more concerning moments arrived when the prosecutor exercised the State's fourth peremptory challenge against African American panelist Joyce Muldrow. Muldrow was the third African American in a row against whom the State had exercised a strike. When she was called as a potential juror the prosecutor immediately asked the court to excuse her. When summoned to the bench the prosecutor gave three race-neutral reasons to justify the challenge: first, Muldrow was the sole caregiver to her child and a disabled brother; second, "[s]he has been accused of a crime and convicted of a misdemeanor"; third, Muldrow "knew and was familiar with" Davis's grandfather. Defense counsel responded that Muldrow was a sole caregiver, but she also "said that she would be able to have people cover for that, certainly for these two days of this hearing." Defense counsel also argued that Muldrow had stated that she knew Davis's grandfather had a radio station but had never listened to any of the programs.
The circuit court responded:
[O]ut of the four strikes, they used [three] of them against African Americans, *718 so they have to state a race neutral reason at this point in time. It's not, like I say, the first one, there wasn't a pattern, but obviously, there is a pattern here ... case law is that the reason sometimes doesn't have to be rational, they don't have to be anything other than something that they say that's race neutral.
The court then initially agreed with defense counsel, not the prosecutor, regarding Muldrow's ability to be seated. "I agree with you that Ms. Muldrow said she would make arrangements, and not let that be a problem[.]" And "I agree with you that her [Muldrow's] characterization of knowing Mr. Davis was minimal. ... She didn't know him personally, never listened to the program or anything." The prosecutor then added that Muldrow's sister had been murdered in Miller County "and the individual responsible for that had never been caught or prosecuted." To which the court replied, "That's been the case with a bunch of people that's on the panel, one of them being Ms. Reynolds, who had crime that you didn't strike, which was white."
The court rejected the prosecutor's stated reasons to strike Muldrow; yet it allowed the strike, stating, "So, you've made your record, and those are race neutral reasons, so this court can't stand in the way of it , but that's where you are." (Emphasis added.)
The State used its fifth peremptory strike against the next juror that the clerk called, Gwendolyn Richards, an African American woman. The prosecutor challenged Richards because she has a child around twenty-three years of age, a husband who worked in the Arkansas school system, and "contact with children." The prosecutor also told the court that Richards "made a scoffing noise and face which indicated to me that she would give them less credibility than she would anyone else."[1] Defense counsel responded, "[T]here's probably not a soul out there that has no contact whatsoever with people who are the age of the defendant[.]"
In response to the parties' arguments, the court said:
As stated previously, the court has found that there is a pattern, and the state is required to give race neutral reasons ... those reasons can be a variety of things, some of them not even rational as the case law, but the more members that are stricken from this case, obviously the more prejudicial that it looks in this case, but making the finding the court does have to find that the reasons by the state are race neutral reasons, so I will allow the strike.
(Emphasis added.) Six more potential jurors, all non-African American, were individually questioned. The State did not attempt to exercise its sixth strike against any one of them. Among the six jurors was Gerald Bogan, whom defense counsel had previously represented, and against whom the State had dismissed all criminal charges. The prosecutor accepted African American Louvenia Lee as the fourth juror to be seated. Three more non-African Americans were then seated as jurors.
The prosecutor exercised her sixth peremptory strike against Schlandra Waller, an African American woman. The prosecutor asked Waller about current criminal charges pending against Waller's brother. Waller replied, "Well, he had a, I think it *719 was dropped in Miller County." She agreed that her brother was in a nursing home. The stated reason the prosecutor gave for the court to excuse Waller was, "I am currently prosecuting her brother over a failure to register. He is a registered sex offender out of Arizona." The court responded, "[I]n this particular case, the state has stated their reason and the court does find that is a race neutral reason for the striking of this juror."
The next juror the clerk called was an African American woman named Melba Taylor. She was ultimately accepted as a juror, though the prosecutor moved to excuse her for cause. The court denied the request, stating that other jurors had expressed the same or similar problems, so Taylor would not be excused for the stated reasons. When the prosecutor asked the court to reconsider, it responded: "There was an objection this time because this juror was a black female, and you struck in this case five black members of the jury, and that's why. ... That's the second member of that race [African American] on the jury." The prosecutor did not object to Everlene Anderson being seated on the jury, making her the third and final African American to sit in judgment of the State's case against Davis.
II. The Law of Race-Based Peremptory Challenges
The Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States "prohibits all forms of purposeful racial discrimination in selection of jurors." Batson , 476 U.S. at 88, 106 S.Ct. 1712. Purposeful discrimination not only violates the rights of criminal defendants, it deprives prospective jurors of "a significant opportunity to participate in civic life." Powers v. Ohio , 499 U.S. 400, 409, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). "[T]he selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." Taylor v. Louisiana , 419 U.S. 522, 528, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Therefore, the "Constitution forbids striking even a single prospective juror for a discriminatory purpose." Foster v. Chatman , --- U.S. ----, 136 S. Ct. 1737, 1747, 195 L.Ed.2d 1 (2016) (internal citation omitted). And "[w]hen an uncorrected Batson violation is properly preserved for appeal by objection, the trial court's error in permitting a discriminatory strike cannot be harmless." Wayne R. LaFave et al. 6 Criminal Procedure § 22.3(d) Peremptory Challenges (4th ed.) (Nov. 2018 update) (collecting cases) (footnotes omitted).
"The rub has been the practical difficulty of ferreting out discrimination in selections discretionary by nature, and choices subject to myriad legitimate influences, whatever the race of the individuals on the panel from which jurors are selected." Miller-El v. Dretke , 545 U.S. 231, 238, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). To help ferret out discrimination, the Supreme Court of the United States set forth a three-step inquiry that courts conduct when intentional discrimination threatens to infect the juror-selection process by way of peremptory strikes. See Batson , 476 U.S. at 97, 106 S.Ct. 1712. This appeal is primarily about the third step in the Batson analysis. We now set forth the three steps but will focus on the third one.
The First Step. When challenging a peremptory strike that is allegedly racially motivated, the defendant must make a prima facie showing sufficient to infer that the prosecution exercised its strikes to exclude one or more jurors based on the defendant's race. Batson , 476 U.S. at 96, 106 S.Ct. 1712. The defendant is entitled to the presumption that peremptory challenges allow "those to discriminate *720 who are of a mind to discriminate." Avery v. Georgia , 345 U.S. 559, 562, 73 S.Ct. 891, 97 L.Ed. 1244 (1953). In this case, no one disputes that Davis satisfied this step multiple times during the jury-selection process.
The Second Step. "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation" for the strike. Batson , 476 U.S. at 97, 106 S.Ct. 1712. A prosecutor's proffered race-neutral reason does not have to be "persuasive or even plausible." Purkett v. Elem , 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The plausibility or persuasiveness of the proffered race-neutral reason is, however, relevant during the third and final step. Id. Transitioning between the second and third steps can cause some confusion.
The Third Step. The most critical step in a Batson challenge is often the final one, during which the circuit court must decide whether the defendant has met his or her burden of demonstrating purposeful discrimination under the relevant circumstances. Batson , 476 U.S. at 98, 106 S.Ct. 1712 ("The trial court then will have the duty to determine if the defendant has established purposeful discrimination."); Snyder v. Louisiana , 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) ("[A]ll of the circumstances that bear upon the issue of racial animosity must be consulted.").
The connection between the second and third Batson steps is this: if the prosecutor offers a facially race-neutral reason for a peremptory strike (step two), then the court moves to the third step, which requires it to credit or reject the reason. Snyder , 552 U.S. at 477, 128 S.Ct. 1203. A defendant's challenge to a strike can turn on whether the circuit court believes the prosecutor's race-neutral reason for the attempted strike. See Rice v. Collins , 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) (accepting state trial court's decision to credit prosecutor's race-neutral explanation). Considerations that help a court determine whether to accept or reject a race-neutral reason are "the prosecutor's demeanor"; how reasonable or improbable the given reasons are; and whether the given explanation "has some basis in accepted trial strategy." Miller-El v. Cockrell , 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). But a circuit court does not have to simply accept the race-neutral reason given. Id.
In addition to prosecutors' demeanors, the reasonableness (or improbability) of the reasons given for a strike, and whether the stated reasons have a grounding in accepted trial strategy, the Supreme Court of the United States has provided the following points courts can use when assessing whether a defendant has overcome a race-neutral reason and thereby established some "evidence tending to prove purposeful discrimination":[2]
• The strength of the prima facie case, meaning that the prosecutor exclusively or disproportionately excluded racial minorities. Dretke , 545 U.S. at 240, 125 S.Ct. 2317.
• The statistical numbers describing the prosecution's use of peremptory strikes are relevant, especially when "[h]appenstance is unlikely to produce this disparity." Cockrell , 537 U.S. at 342, 123 S.Ct. 1029 (noting that the "prosecutors used their peremptory strikes to exclude 91% of the eligible African American venire members").
*721 • Side-by-side comparisons of African American panelists who were struck and "white panelist[s] allowed to serve." Dretke , 545 U.S. at 241, 125 S.Ct. 2317. See also Snyder , 552 U.S. at 483, 128 S.Ct. 1203 (finding prosecutor's explanation implausible when the reason for striking an African American juror would seem equally applicable to an accepted non-African American juror).
• A "racially disparate mode of examination" of potential jurors during voir dire. Cockrell , 537 U.S. at 332, 123 S.Ct. 1029 (noting that most African American potential panelists were first given a detailed description of an execution method in Texas and were not asked about what minimum sentence they would impose as compared to non-African American potential panelists). See also Dretke , 545 U.S. at 255, 125 S.Ct. 2317.
• A prosecutor's "mischaracterization of the record." Foster , 136 S. Ct. at 1753. See also Dretke , 545 U.S. at 244, 125 S.Ct. 2317 (a prosecutor mischaracterizing a juror's testimony when giving a facially race-neutral reason for the peremptory strike tends to show discriminatory intent).
• A history of racial discrimination by the prosecuting office. Dretke , 545 U.S. at 263, 125 S.Ct. 2317 (noting state prosecutor office's history of "systemically excluding blacks from juries" and a formal policy to exclude minorities from jury service).
More to the point for this case's purposes is the Supreme Court's statement on the plausibility of a prosecutor's stated reason(s) for a strike:
It is true that peremptories are often the subjects of instinct, and it can sometimes be hard to say what the reason is. But when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A Batson challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.
Dretke , 545 U.S. at 252, 125 S.Ct. 2317 (internal citations and quotations omitted). Moreover, if the prosecutor's explanation is deemed pretextual, then it "gives rise to an inference of discriminatory intent," and excluding a juror for the stated race-neutral reason is unlikely to survive a Batson challenge. Snyder , 552 U.S. at 485, 128 S.Ct. 1203.
The burden to sufficiently establish a Batson violation, however, always remains with the defendant. Purkett , 514 U.S. at 768, 115 S.Ct. 1769. And a circuit court's ruling on a Batson challenge will not be reversed unless its findings are clearly against the preponderance of the evidence. Armstrong v. State , 366 Ark. 105, 233 S.W.3d 627 (2006). But as the Supreme Court of the United States has written, "[d]eference [to the lower court's factual findings] does not by definition preclude relief." Cockrell , 537 U.S. at 340, 123 S.Ct. 1029.
III. The Batson Violation
Davis argues the following as he seeks to establish that a Batson violation occurred:
The trial court appeared to rely on a fundamental misunderstanding of Batson , noting that the State's race-neutral reasons did not even have to be rational to overcome a Batson challenge. The trial court essentially ignored the third step in the Batson analysis-whether *722 the defense had proven purposeful discrimination-instead permitting the strikes solely based on presentation of any race-neutral reason at all.
The circuit court, in other words, did not go deeply enough into the Batson process and decide whether to accept or reject the State's stated reasons and then determine whether Davis had carried his burden to prove purposeful discrimination. The State responds that Davis failed to counter the race-neutral reasons the prosecutor gave to the court.
The parties' legal battle has therefore joined at Batson 's third step and whether the circuit court properly applied it. A word of caution is warranted before proceeding further. We do not decide today the ultimate questions of whether Davis sufficiently established a pattern of discriminatory intent against African American venire members and whether the circuit court's decision to reject Davis's challenges were clearly against the preponderance of the evidence. Our focus is solely on whether a constitutionally mandated process was correctly followed-not whether the conclusion at the end of a correctly applied process is sufficiently supported by the record. The two things are not one and the same.
As we have mentioned, the way through a Batson challenge has caused some confusion when proceeding from the second step to the third step. See MacKintrush v. State , 334 Ark. 390, 399, 978 S.W.2d 293, 297 (1998) ("[W]e must confess to some confusion over what the term [ Batson objection] means[.]"); see also Woods v. State , 2017 Ark. 273, 527 S.W.3d 706 (addressing the transition from step two to three and attempting to clarify what analysis is required and when). This case is no different. Here, we agree with Davis that the circuit court seems to have believed that it had to accept the State's race-neutral reasons at their face values, which is contrary to Supreme Court precedent. "[O]bviously, there is a pattern here ... case law is that the reasons sometimes doesn't have to be rational, they don't have to be anything other than something that they say that's race neutral," said the circuit court. But Batson 's third step requires a circuit court to decide whether to credit the prosecution's race-neutral reasons or to deem them pretextual. "If any facially neutral reason sufficed to answer a Batson challenge, then Batson would not amount to much more than Swain [v. Alabama , 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) ]." Dretke , 545 U.S. at 239-40, 125 S.Ct. 2317.
Take Joyce Muldrow. When handling this strike, the court initially seemed to reject the prosecutor's facially race-neutral reasons as factual errors. The court in fact agreed with defense counsel in some respects. "I agree with you that Ms. Muldrow said she would make arrangements, and not let that be a problem[.]" And "I agree with you that her [Muldrow's] characterization of knowing Mr. Davis was minimal ... She didn't know him personally, never listened to the program or anything." It also said that "lots of people" had raised their hands about past crimes and that Muldrow's sister's murder or the prior misdemeanor conviction did not disqualify her. Yet Muldrow was still struck because the prosecutor had given a race-neutral reason, the court apparently believing that "it can't stand in the way of it," the "it" being the proffered race-neutral reason. In other words, the court thought its hands were tied because the prosecutor had given a race-neutral reason; but the prevailing Supreme Court precedents place no such binding upon a circuit court's power or judgment.
Joyce Muldrow is just one example of persisting doubt that the circuit *723 court expressed as it had to repeatedly apply the Batson framework to five of the prosecutor's peremptory strikes. All circumstances are relevant when determining whether discrimination entered the trial process. And when considering whether an alleged Batson violation has occurred, the striking of one juror may be considered when deciding if another juror is being targeted for an improper reason. Dretke, supra . For example, that the prosecutor asked the court to excuse African American Melba Taylor for cause after the State had exhausted its six preemptory strikes is telling. And when the prosecutor moved to strike Taylor for cause, the circuit court promptly rejected the State's race-neutral reasons. But when the State moved to exclude African Americans using preemptory strikes, the court believed it had to accept the given reasons. (For example, "the court does have to find that the reasons by the state are race neutral reasons, so I will allow the strike.") (Emphasis added.)
All this is to say that we are persuaded the circuit court was concerned with the prosecution's course during jury selection. And though facially race-neutral reasons were given for five of the six peremptory strikes the State exercised against African Americans, the court held that it was bound to accept the reasons (even irrational ones) when it was not so bound. Moreover, the court flatly rejected a for-cause strike when the State tried to exclude an African American venire member after it had exhausted its allotted peremptory strikes. The tone of that rejection further informs our conclusion that the court may well have denied one or more of the State's peremptory challenges had the court believed the Federal Constitution empowered it to reject a race-neutral reason as being a pretext for intentional discrimination.
IV. Conclusion
The circuit court remained engaged with, and attuned to, the possibility of a Batson violation. It handled defense counsel's objections with the seriousness that they deserved. And it gave full voice to the State's reasons for the peremptory challenges. Ultimately, however, the circuit court mistakenly thought that it could not reject a race-neutral reason given by the prosecutor. Granting that a Batson challenge can be difficult to superintend in real time as the trial process unfolds, we nonetheless hold that the court erred when applying Batson 's third step given Supreme Court precedent, which we must follow. U.S. Const. art. VI, § 1, cl. 2 (Supremacy Clause).
The judgment against Shelby Jamal Davis is hereby reversed, and the case remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.
Abramson, Gladwin, Whiteaker, Vaught, and Murphy, JJ. agree.
Gruber, C.J., and Klappenbach and Hixson, JJ., dissent.

When a trial court does not expressly find that a State's peremptory strike is based on a venire member's demeanor, an appellate court cannot presume that the trial court credited the State's demeanor-based reason for the strike. See Snyder v. Louisiana , 552 U.S. 472, 479, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). Here, the circuit court did not make any express demeanor-related rulings regarding any venire member.

Dretke , 545 U.S. at 241, 125 S.Ct. 2317.