Cite as 2020 Ark. App. 153

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CR-19-431

| | |
|---|---|
| MICHAEL LANDON DOLL<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **OPINION DELIVERED:** MARCH 4, 2020<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[04CR-16-1066]<br><br>HONORABLE ROBIN F. GREEN, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Michael Landon Doll appeals his convictions by a Benton County jury of attempted capital murder, aggravated residential burglary, and battery in the first degree. He argues that the circuit court erred by (1) disqualifying a juror whose primary language is Spanish; (2) allowing two lay witnesses to offer opinions as experts; (3) allowing the State to challenge his testimony that his divorce from his previous wife was amicable; and (4) allowing the State to comment in closing argument that no mental-health experts had testified for the defense. We affirm.

### I. *Facts and Procedural History*

After a two-year marriage, Doll and his wife Brenda went through a contentious divorce in Jasper, Missouri. After a hearing in February 2016 during which the court ruled in Brenda's favor on the disputed issue, Doll was very angry and verbally threatened Brenda as she was leaving the courthouse, stating, "[y]ou'll be dead before the end of the day."

Because of her escalating fear of Doll, Brenda quit her job, changed her last name, and moved to Bella Vista, Arkansas. Very few people knew of Brenda's move, and she wore disguises in public, changed her phone number, and had an alarm system and surveillance cameras installed at her home. However, Doll eventually learned that Brenda was using a new last name and living in Bella Vista.

On June 7, 2016, Brenda went home for lunch and to walk her dog. As she was leaving to return to work, she saw Doll approaching her home. She went back inside, bolted the door, and called 911. Hearing Doll kicking her front door, Brenda retrieved and fired a gun in hopes of alerting Doll that she was armed. Rather than scaring him away, however, Doll broke into her home by throwing a large rock through the glass pane of the door. When Brenda saw Doll standing in her home holding a gun, she fired her gun again and ran to her bedroom closet. Doll then began firing his gun. During the incident, Brenda fired five shots, and Doll emptied the clip of his .40-caliber handgun as he was firing at her. While Brenda was in the closet, a bullet grazed her underneath her right breast.

Video-surveillance footage from Brenda's home shows that after emptying his gun, Doll ran from Brenda's home back to his truck. He then rammed Brenda's car down an embankment into a ravine, where it rested leaning against a telephone pole, before fleeing back to Missouri.

On July 25, 2016, Doll was charged with one count each of attempted capital murder, aggravated residential burglary, and battery in the first degree. He was tried by a jury on October 30 through November 1, 2018 and found guilty of all three charges. The jury recommended sentences of forty years, forty years, and twenty years, respectively,

2

which the court ordered to run consecutively. Doll filed a timely notice of appeal, and this appeal followed.

## II. *Discussion*

### A. Did the Circuit Court Err in Excusing Potential Juror Merlos

The question of a juror's qualification based on imperfect knowledge of English is within the circuit court's sound discretion, and this court will not reverse absent "flagrant abuse" of that discretion. *Dillon v. State*, 317 Ark. 384, 392, 877 S.W.2d 915, 919 (1994) (citing *Scifres v. State*, 228 Ark. 486, 489, 308 S.W.2d 815, 817 (1958)). The *Scifres* court noted:

> It is not necessary, of course, that a juror should be a scholar and understand the definition of every word used in the course of a trial by witnesses, counsel, and the court. It is sufficient if he is conversant with the language to the extent that he can understand in substance the testimony of witnesses and the argument of counsel. . . . Jurors must be presumed to possess the qualifications required[.]

228 Ark. at 489, 308 S.W.3d at 817 (internal citations omitted).

A defendant does not have a right to the service of any specific juror but only the right to a competent, fair, and impartial jury. *E.g.*, *Jones v. State*, 318 Ark. 704, 713, 889 S.W.2d 706, 710 (1994). To demonstrate prejudice resulting from the disqualification of a juror for cause, Doll must show that "some biased or incompetent juror was thrust upon" him in the place of the excused juror. *Owens v. State*, 354 Ark. 644, 661, 128 S.W.3d 445, 456 (2003). Thus, "it is difficult to imagine a case where the judge had excused a juror from further service on the regular panel which would afford any defendant just cause of complaint." *Id.*, 128 S.W.3d at 456 (quoting *Sullivan v. State*, 163 Ark. 11, 14, 258 S.W. 643, 644–45 (1924)).

3

Arkansas Code Annotated section 16–31–102(a) (Supp. 2019) notes in part that the following persons are disqualified to act as a juror:

(2) Persons who are unable to speak or understand the English language; [and]

(3) Persons who are unable to read or write the English language, except that the circuit judge, in the exercise of his discretion, may waive these requirements when the persons are otherwise found to be capable of performing the duties of jurors.

During voir dire of the first panel of potential jurors, the State moved to strike potential juror Merlos after briefly inquiring about his English comprehension. A lengthy exchange occurred among the judge, counsel, and Mr. Merlos, after which he was excused for cause. Doll argues that based on Merlos's responses to questions posed to him by both the judge and counsel, it was clear that Merlos comprehended English. Doll submits that Merlos confirmed he was able to read English despite being unable to write it, that Spanish is his primary language and that Merlos sufficiently comprehended English to the extent that he was able to answer every question put before him. Doll further argues that Merlos was sufficiently conversant with English that he could understand the substance of the testimony of witnesses and the arguments of counsel. Given the presumption that Merlos possessed the required qualifications, Doll submits that the circuit court abused its discretion by excusing him over Doll's objection.

Doll cites *Davis v. State*, 2019 Ark. App. 303, at 6, 577 S.W.3d 714, 719, for the proposition that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." He now claims, for the first time, that the exclusion of Merlos was prejudicial to his case because

the jury was not a representative cross section of the community as required by the Sixth Amendment.

We disagree and hold that the circuit court was within its discretion to excuse juror Merlos. During voir dire, Merlos approached the bench and expressed to the judge that he did not know how to write English and could speak and read English "just a little bit." When asked if he spoke some English but did not understand all the words, Merlos replied that was correct. In response to questions by the court, Merlos explained that Spanish is his primary language and that his limited knowledge of English would impact his ability to understand the evidence in the case. Of particular interest during the exchange, the State noted that numerous documents would be introduced at trial and that Merlos's difficulty with English would disqualify him because of his inability to understand the evidence.

Doll has failed to show that he was prejudiced by having a biased juror "thrust upon" him in Merlos's place. *See, e.g., Owens, supra.* He does not argue that he was denied a competent, fair, and impartial jury, as he must demonstrate to prevail on this claim. *E.g., Jones, supra.* The record indicates that Merlos was concerned enough about his ability to understand the proceedings that he approached the court about it. We hold that the court did not "flagrantly abuse" its discretion in excusing Merlos and point out that Doll's argument regarding an increasing number of persons who primarily speak languages other than English has no bearing on whether the jury that actually tried him was competent, fair, and impartial.

Finally, Doll's argument that he was prejudiced because Merlos's exclusion deprived him of a jury that represented a cross section of the community is not preserved for appellate

5

review. Doll did not object on that basis below, and he cannot have that argument considered for the first time on appeal. *Jackson v. State*, 375 Ark. 321, 330–31, 290 S.W.3d 574, 581 (2009).

## B. Lay Witnesses' Testimony

Circuit courts have broad discretion in deciding evidentiary issues, and those rulings are not reversed on appeal absent an abuse of discretion. *E.g.*, *Conte v. State*, 2015 Ark. 220, at 26, 463 S.W.3d 686, 702; *Gillean v. State*, 2015 Ark. App. 698, 478 S.W.3d 255. The standard test for admissibility of expert testimony is whether the testimony will aid the trier of fact in understanding the evidence or in determining a fact in issue. *Russell v. State*, 289 Ark. 533, 712 S.W.2d 916 (1986). "An important consideration in determining whether the testimony will aid the trier of fact is whether the situation is beyond the ability of the trier of fact to understand and draw its own conclusions." *Utley v. State*, 308 Ark. 622, 625, 826 S.W.2d 268, 270 (1992).

Arkansas Rule of Evidence 701 (2019) permits a nonexpert witness to testify in the form of opinions or inferences when those opinions or inferences are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the testimony or the determination of a fact in issue. Rule 701 is not a rule against opinions; rather, it conditionally favors them. *E.g.*, *Moore v. State*, 362 Ark. 70, 75, 207 S.W.3d 493, 497 (2005).

Arkansas Rule of Evidence 702 (2019) states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The jury can

consider the opinion along with other evidence and determine the weight to be attached to the testimony. *Simpson v. State*, 83 Ark. App. 201-A, 201-D, 119 S.W.3d 83, 85 (2003).

1. *Paramedic Josh Whitaker*

Doll was charged with battery in the first degree in violation of Ark. Code Ann. § 5-13-201(a)(8) (Repl. 2013) and attempted capital murder in violation of Ark. Code Ann. § 5-10-101(a)(4) (Supp. 2017). One key issue in the trial was whether Brenda had sustained a gunshot wound as opposed to another type of injury to her chest because Doll was specifically charged with attempting to injure and causing an injury by means of a firearm.

The State called firefighter/paramedic Josh Whitaker, the lead medic at the scene who treated Brenda at her home following the shooting. Whitaker explained that when he arrived at Brenda's home, he found her on the floor in the master closet. Brenda reported that she had been shot in her right chest, and during his examination, Whitaker found a "deep abrasion" underneath her right breast that resembled "a really bad carpet burn." He stated that he did not find any "penetrating wounds." When the State asked Whitaker if the injury he observed was consistent with a graze wound, Doll's counsel commented, "improper opinion," without any elaboration.

Assuming counsel's comment constituted an objection, the court overruled it. Whitaker then testified that the injury "was most likely from a high-velocity projectile." He stated that he assumed the tearing on Brenda's clothing in the area of the injury was caused by a projectile. Photographs of Brenda's torn clothing and her injury were introduced, and no other medical witnesses testified at trial.

7

Doll argues that Whitaker's testimony about the cause of Brenda's injury was improper because it suggested she had been injured by a firearm. Doll notes that testimony about whether a particular injury was caused by a firearm rather than something else requires "specialized knowledge" pursuant to Rule 702. He submits that this is the type of situation that is beyond the ability of the jury to understand and draw its own conclusions, *see Utley*, *supra*, and why Arkansas courts generally require medical expertise for testimony regarding whether an injury is a gunshot wound as opposed to some other sort of injury. *See, e.g.*, *Johnson v. State*, 308 Ark. 7, 823 S.W.2d 800 (1992).

Here, Doll notes that Whitaker did not testify regarding experience, knowledge, or relevant training that would have properly qualified him to give such testimony; he testified merely that he had been a paramedic and firefighter for nineteen years. Accordingly, Doll claims the circuit court abused its discretion by overruling his objection and permitting the testimony.

Doll also argues that admission of Whitaker's testimony was prejudicial to his case because the State focused heavily on it in closing arguments as follows:

> You heard the testimony of Josh Whitaker from the Bella Vista Fire Department describe [Brenda's] injury, describe through all of his experience into the evidence there, that that was consistent with a graze wound from—from a projectile, a bullet. Michael Doll shot her with his gun. Hit her with a bullet, causing physical injury.

Doll argues that absent Whitaker's testimony, Doll argues there is a reasonable probability of a different outcome in his case; accordingly, he urges that his convictions be reversed and remanded.

We disagree and hold that Doll did not preserve his arguments for review; alternatively, the circuit court did not abuse its discretion by allowing Whitaker to offer his opinion. Doll's argument on appeal goes beyond his simple "improper opinion" complaint before the circuit court. A party cannot enlarge or change the grounds for an objection on appeal but is bound by the scope and nature of the arguments made at trial. *E.g.*, *Riley v. State*, 2012 Ark. 462, at 3. Doll's counsel neither explained why Whitaker's opinion would be improper nor argued that a witness with "medical expertise" was required, that the issue was beyond the ability of the jury to understand, or that Whitaker lacked the qualifications to opine regarding the cause of Brenda's injury.

Alternatively, we hold that the circuit court was within its discretion to allow Whitaker's testimony. Paramedics such as Whitaker are allowed to testify as lay witnesses concerning the cause of injuries they observe based on their experience. *E.g.*, *Russell v. State*, 306 Ark. 436, 440–41, 815 S.W.2d 929, 932 (1991). Moreover, the jury saw photographs of both the clothing and the injury. Additionally, Brenda both told Whitaker at her home and testified at trial that she had been shot. It is undisputed that multiple bullets were fired while Doll was inside Brenda's home and that he fired most of them.

### 2. *Detective Ed Williams*

Ed Williams, a detective at the Bella Vista Police Department, testified about evidence collected and photographs taken at Brenda's home. He identified State's exhibit 52 as a photograph of a bullet hole on the inside of the master bedroom closet where Brenda hid during the shooting. Doll's counsel objected to the State's asking Williams if it appeared that the bullet came from inside or outside the closet because Williams had not been

9

tendered as an expert to explain where the bullet entered and exited. The State explained that Williams was not being asked as an expert and that he would establish a foundation for Williams to answer the question.

Williams explained that he had been a law-enforcement officer for over twenty years. He stated that he investigates cases involving bullet holes once or twice a year, noting that few shootings occur in Bella Vista. He also testified that although he had not attended classes concerning projectiles, he could tell that the bullet that made the hole shown in State's exhibit 52 came from outside the closet because "it's got the paint knocked off of it." He added that the hole on the outside wall was small "when it came through the boards."

Doll's counsel renewed his objection. The court ruled that it would "let him finish" but directed the State to establish Williams's experience with firearms and his level of knowledge about where bullets enter and exit. The court explained that it would limit Williams's testimony to that. Without further objection, Williams testified that he could differentiate between entry and exit holes from shooting tin cans. He said that he had been a certified police officer since 1996 and had owned guns all his life. He noted that the Sheetrock pictured in State's exhibit 52 was pushing out from the hole.

Doll submits that testimony regarding bullet trajectory requires specialized knowledge as defined by Rule 702 because it is the type of situation that is beyond the ability of the jury to understand and draw its own conclusions. *Utley*, *supra*. Doll maintains that the circuit court implicitly acknowledged as much when it directed the State to lay further foundation for Williams's testimony. Doll argues that Williams lacked the expertise necessary to give opinion testimony regarding such specialized knowledge because he had

no training in ballistics or bullet trajectory and testified to nothing more than mere experience handling firearms—which does not make one experienced in the realm of ballistics or forensic-scene reconstruction.

Arkansas courts generally require proper expertise for testimony regarding bullet trajectory. *See, e.g.*, *Thornton v. State*, 2014 Ark. 157, 433 S.W.3d 216; *Ponder v. State*, 330 Ark. 43, 953 S.W.2d 555 (1997); *McArty v. State*, 316 Ark. 35, 871 S.W.2d 346 (1994); *Johnson, supra*; *Phillips v. State*, 2011 Ark. App. 575, 386 S.W.3d 99. Doll maintains that Detective Williams, by contrast, clearly lacked the expertise necessary to give such testimony.

Doll asserts that the circuit court abused its discretion by admitting Williams's testimony and claims that the introduction of this testimony was prejudicial because the State focused heavily on this evidence during closing argument. Specifically, the State argued: "You don't have to be a ballistics expert to look at the photos and see exactly where someone had to be to put these four holes into this closet wall."

First, we note that Doll's only objection occurred when the State asked Williams about State's exhibit 52. Doll's counsel did not object when any other photographs of bullet holes were admitted, and Williams was asked his opinion only with regard to State's exhibit 52. Moreover, Doll's counsel failed to renew his objection after the State finished questioning Williams about his qualifications and experience with firearms to determine whether State's exhibit 52 showed an entry or exit hole. By not renewing his objection or requesting a final ruling on his previous objection after the State concluded its foundation

11

inquiry, Doll failed to preserve this issue for appeal. *E.g.*, *Byrum v. State*, 318 Ark. 87, 93–94, 884 S.W.2d 248, 252 (1994).

The jurors saw the photograph in question and could reach their own conclusions about what it depicted. Moreover, Williams did not testify regarding "bullet trajectory," and Doll never objected on the basis that he did. Williams specifically testified that, from the appearance of the hole from inside the closet, the bullet that made it was fired from outside the closet. He offered no opinion regarding the trajectory of the bullet, such as where the shooter was standing or the angle of the bullet through the wall. No specialized training was required for a person to see the position of the Sheetrock and paint around the hole in the photograph.

C. Cross-Examination Regarding a Prior Allegation of Domestic Violence

This court reviews matters concerning the scope of cross-examination for abuse of discretion. *E.g.*, *Holloway v. State*, 363 Ark. 254, 213 S.W.3d 633 (2005). The use of cross-examination is an important tool in bringing the facts before the jury, and the circuit court has wide latitude in determining the scope of cross-examination. *Id.* The State may cross-examine a witness about matters that were raised on direct examination. *E.g.*, *Jenkins v. State*, 60 Ark. App. 1, 8, 959 S.W.2d 57, 60 (1997). A party that opens the door to a particular line of cross-examination cannot demonstrate that he or she was prejudiced by the evidence elicited. *E.g.*, *Eubanks v. State*, 2009 Ark. 170, at 9, 303 S.W.3d 450, 455. As previously noted, this court will not reverse an evidentiary ruling absent a showing of prejudice. *E.g.*, *Conte*, *supra*. A determination to admit or exclude evidence will only be

reversed if it is an abuse of discretion, which requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *See Gillean*, *supra*.

Rule 404(b) (2019) of the Arkansas Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In determining whether Rule 404(b) applies, our supreme court asks whether the State introduced evidence of the defendant's "other crimes, wrongs, or acts" through the witness's testimony. *White v. State*, 2009 Ark. 374, at 5, 326 S.W.3d 421, 424. Once Rule 404(b) applies, the evidence must be independently relevant, and its probative value must not be substantially outweighed by the danger of unfair prejudice in order to be admissible. *See Garner v. Kees*, 312 Ark. 251, 848 S.W.2d 423 (1993).

Such evidence "must be relevant in the sense of tending to prove some material point rather than merely trying to prove the defendant is a criminal." *Donaldson v. State*, 2009 Ark. App. 119, at 4, 302 S.W.3d 622, 625; *see also Davis v. State*, 362 Ark. 34, 44, 207 S.W.3d 474, 482 (2005). If Rule 404(b) applies, evidence must be scrutinized under Rule 403 "irrespective of whether the issue is explicitly raised by the defendant before such evidence is admitted." *Price v. State*, 268 Ark. 535, 538–39, 597 S.W.2d 598, 599–600 (1980).

As Doll was testifying about his career in the Air Force, his attorney asked him what he did after the Air Force. Doll replied, "I retired, and I came—I got divorced from my first wife—and that was amicable, it wasn't nasty or anything, and I came back to Missouri and I met Brenda[.]"

Before Doll's cross-examination began, the State informed the court that it planned to ask about an incident in which the police were called to a disturbance between Doll and his previous wife, Kellie, during their divorce. The State explained that by describing the previous divorce as "amicable," Doll was trying to make a distinction between that divorce and this divorce. Doll's counsel replied that he did not believe that situation had much to do with Doll's first divorce, but that he could try to call Kellie to say that the incident in question was not "that big of a deal."

The circuit court found that Doll had differentiated his first divorce from his second. The State then offered an officer's note stating, "Upon arrival, I made contact with the victim, Kellie Doll, and her husband, Michael Doll. For the past two days, both the victim and defendant were involved in a verbal altercation concerning their divorce." The court then found that Doll had "opened the door" and allowed the statement to be admitted without further comment from Doll's counsel.

On cross-examination, Doll admitted that the police had come to his house on two consecutive days because of a continuing verbal altercation with Kellie. He denied that he had destroyed personal property out of anger and spite and said that his daughter had accused him of throwing a bottle at Kellie. He said that he had thrown an empty water bottle at a wall when Kellie was "nowhere near it." He testified that the police report correctly stated that he had thrown a bottle and that he denied he threw it at Kellie.

Doll argues that the circuit court abused its discretion by allowing the State to pursue this line of cross-examination because it was not relevant to rebut his testimony regarding

his divorce from Kellie. His counsel argued Doll's domestic dispute with Kellie was not mutually exclusive from their divorce having been amicable.

Doll urges that admission of this evidence was prejudicial because it allowed the State to introduce propensity evidence that would have been inadmissible pursuant to Rule 404(b) through the back door of impeachment. Because the State introduced evidence of another act through the line of questioning at issue, Doll argues Rule 404(b) clearly applied.

Doll's argument is not preserved for our review because he did not actually object to the proposed cross-examination. He neither used the word "objection," nor stated that the State should not be allowed to question him about the previous divorce, nor explained why the State's question should not be allowed. His primary response suggested that he perhaps could call Kellie to say that the argument was "not that big of a deal." In the absence of a clear, specific objection below. This argument is not preserved for review. *E.g.*, *Stone v. State*, 371 Ark. 78, 82, 263 S.W.3d 553, 555 (2007). Although Doll bases his appellate argument primarily on Rule 404(b), he never made an argument to the circuit court based on that rule. To preserve a Rule 404(b) argument for appeal, a specific objection must be made at trial. *E.g.*, *Conte*, 2015 Ark. 220, at 29–30, 463 S.W.3d at 704.

D. State's Rebuttal Closing Comment on No Mental-Health Experts Testifying

The circuit court has broad latitude in supervising and controlling the arguments of counsel, and its ruling is not subject to reversal unless there is a manifest, gross abuse of discretion or the matter complained of is a statement of the attorney's opinion made only to arouse the passion and prejudice of the jury. *E.g.*, *Armstrong v. State*, 366 Ark. 105, 119, 233 S.W.3d 627, 638 (2006). The "mere expression of opinion of counsel in their argument

before juries" is permitted "unless the expression is so flagrant as to arouse passion and prejudice, made for that purpose, and necessarily having that effect." *Cobb v. State*, 340 Ark. 240, 247, 12 S.W.3d 195, 199 (2000).

Doll testified that he experienced PTSD as a result of his military service and had sustained a "traumatic brain injury" in an automobile accident in 2015. He testified that he received antidepression medication from a doctor at the Benton County jail; saw a psychiatrist, Dr. Lacy Matthews, in Little Rock; was examined by Dr. Michael Wood, with whom he discussed what had occurred at Brenda's home; and saw another psychiatrist or psychologist, Dr. Richard Back. None of the doctors testified at trial.

In his rebuttal closing argument in the guilt phase of the trial, the State noted Doll's testimony that he had seen several mental-health doctors:

> [Doll's] got PTSD, you know, but didn't try to come back and argue that really, did they? You know why? Because you learn that during the course of this litigation his attorneys had him seen by not one mental-health professional—clinical psychologist and psychiatrist—not a second one later on, but a third one even further later on. And guess what, not a single one of those doctors, with all their degrees and all their training—

Doll's counsel then interjected, stating that Doll's inconsistent statements and the diagnoses contained in the medical reports were not in evidence. The prosecutor explained that he was going to say that the doctors were not there to testify. Doll's counsel said, "I didn't want you to have—" The circuit court ruled that the proposed argument was permissible, and the State's rebuttal argument ended as follows:

> So back to what I was saying. Not one clinical psychiatrist or psychologist, but a second one and then a third one, and guess what? Not one of those three doctors came in this courtroom at the request of the defendant to tell you anything about the case. What kind of a reasonable inference can you take from that?

16

Ladies and gentlemen, Mr. Doll is guilty as charged. In your heart of hearts, you have an abiding conviction of the truth of these charges. I ask you to go back and do justice for Brenda Doll.

Doll argues that the circuit court manifestly abused its discretion by permitting the State to comment on these items that were not in evidence and on his failure to call witnesses. He submits that they amounted to observations on Doll's failure to raise an affirmative defense of mental disease or defect and were impermissible remarks on Doll's failure to call any mental-health witnesses in his defense.

Doll cites *Cook v. State*, 316 Ark. 384, 386, 872 S.W.2d 72, 73 (1994), in which the State commented in closing argument regarding the testimony of the defendant's alibi witness. Specifically, the alibi witness testified she remembered the exact date of a crucial occurrence because it was the date the family of her boyfriend, Richard, flew into Little Rock from Chicago. *Id*. During closing argument, the State questioned the source of the confirmation of the date and asked, "Where's Richard? Where's the boyfriend? Where is Richard? Richard is working in town today, presumably he could have been subpoenaed." *Id*. Following this statement, the circuit court instructed the jury:

Ladies and gentlemen of the jury, the defendant is not required to prove his innocence. He's not required to subpoena any particular individual for any reason. He does not have to do any of that.

*Id*. On appeal, our supreme court found that the State's argument "was an attempt to shift the burden of proof." *Id*. at 387, 872 S.W.2d at 74 (affirming, however, because the court could not say that the circuit court erred in determining that the instruction remedied that wrong).

Doll argues that the State's comments impermissibly shifted the burden to him to prove his innocence by suggesting that it was Doll's burden to explain the absence of any mental-health witnesses. There was no jury instruction that remedied this wrong as in *Cook*, and the jury was not informed that Doll was not required to subpoena any particular witness. Further, Doll argues that the statements encouraged the jury to infer that the three mental-health evaluators would have testified against Doll or else they would have been called in his defense. He notes that the comments at issue were the very last thing that the jury heard prior to retiring for deliberations.

Doll's counsel appears to have misconstrued what the State was about to say—believing that the State was going to discuss the contents of medical reports not in evidence. When the State replied that it was simply going to say that none of the doctors had testified, Doll made no further objection. *See, e.g.*, *Lard v. State*, 2014 Ark. 1, at 26, 431 S.W.3d 249, 268 (holding that the court will not address an issue concerning closing argument in absence of a contemporaneous objection). Moreover, the circuit court never ruled on any perceived objection to the State's argument. It was Doll's burden to obtain a ruling, and this court will not address an argument in the absence of a ruling. *West v. State*, 82 Ark. App. 165, 171, 120 S.W.3d 100, 104 (2003).

To the extent that counsel's comment is deemed to be an objection to the State's argument, we hold that the State's argument was proper. Arkansas appellate courts have held that the State may comment in closing argument that a defendant did not call witnesses, other than the defendant, to establish facts or theories about the case, and doing so does not shift the burden of proof to the defense. *E.g.*, *Rounsaville v. State*, 2011 Ark. 236, at 3–4;

*Durden v. State*, 93 Ark. App. 1, 9–10, 216 S.W.3d 145, 150 (2005). Accordingly, even if Doll had preserved this issue for appeal, he would not prevail on it.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*James Law Firm*, by: *Michael Kiel Kaiser* and *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.