JOHN DAN KEMP, Chief Justice
The State brings this interlocutory appeal pursuant to Arkansas Rule of Appellate Procedure-Criminal 3 (2018) and contends that the circuit court erred in granting appellee David Reynolds's motion to suppress evidence seized from a search of his cell phone. For reversal, the State contends that the circuit court erred as a matter of law (1) in finding that there was no nexus between Reynolds's cell phone and the criminal activity alleged *648 in the search warrant and (2) in concluding that the cell phone was beyond the scope of the warrant. We dismiss for lack of a proper State appeal.
I. Facts
The investigation of Reynolds began with a CyberTipline report submitted to the National Center for Missing and Exploited Children (NCMEC). NCMEC is a nonprofit organization that operates the CyberTipline, a website through which law enforcement, members of the public, and others report incidents of child pornography and child exploitation. Electronic-service providers that "obtain[ ] actual knowledge of any facts and circumstances from which there is an apparent violation" or a "planned or imminent" violation of statutes concerning child pornography are legally obligated to report such facts and circumstances to NCMEC. See 18 U.S.C. § 2258A(a). NCMEC must forward reports that it receives to an appropriate law enforcement agency. Id. § 2285A(c). When an electronic-service provider voluntarily reports an internet protocol (IP) address[1] for the user or person being reported, NCMEC will "geographically resolve" the IP address via a publicly available online search.
On December 28, 2015, NCMEC received a tip from Twitter, a social-media platform. Twitter reported that devices associated with multiple IP addresses had accessed "sweetoothcandy3," a Twitter account believed to contain images and videos of child pornography. Using publicly available geolocation technology, NCMEC placed one of the IP addresses in Sherwood, Arkansas. NCMEC forwarded the tip and IP-address information to Arkansas law enforcement. Detective Frank Spence of the Sherwood Police Department subpoenaed Comcast, the internet-service provider for that IP address, and requested "information related to the subscriber ... assigned that IP address during the time in question." In response, Comcast disclosed that the IP address was assigned to David Reynolds at 2324 Miramonte Drive in Sherwood.
Spence prepared an affidavit for a search-and-seizure warrant recounting the information that he had received from NCMEC and Comcast. He stated that through his investigation, he learned that the IP address linked to Reynolds's residence had accessed "sweetoothcandy3," the Twitter account containing images of child pornography, forty-one times in December 2015. He also stated that on February 16, 2016, he received a cyber tip that a device associated with the same IP address had accessed a Twitter account tagged with the username "EthanluvsTS" and uploaded twenty images, "several of which depicted children engaging in sexual[ly] explicit conduct." Spence stated that he issued a subpoena to Comcast, and Comcast reported that the IP address was still registered to Reynolds at the Miramonte address. The affidavit stated that there was probable cause to believe that evidence of distributing, viewing, or possessing child pornography would be found on the premises of 2324 Miramonte Drive. According to the affidavit, the "premises" comprised a one-story single-family dwelling; surrounding grounds; outbuildings; and vehicles. Spence sought a warrant to search the premises and seize potential evidence, including computers, computer files, cameras, and mobile-communication devices with internet access.
*649 The district court found probable cause and signed a warrant authorizing the search and seizure sought by Spence. On March 3, 2016, at 12:35 p.m., Spence, along with other Sherwood officers and investigators from the Arkansas Attorney General's office, executed the warrant. When officers first arrived at the residence, no one was home. A few minutes later, Reynolds arrived and drove into the garage where he was met by Spence and another officer. Spence testified at the suppression hearing that he approached Reynolds in the garage and advised him that he had a warrant to search the home and seize any digital devices. Spence asked Reynolds if he had a cell phone. Reynolds produced an iPhone, and Spence took it from him. Spence explained that the officers were there to execute the warrant and that Reynolds was not under arrest and was free to leave. Spence asked for the phone's passcode, and Reynolds declined to provide it. After some discussion with Spence, Reynolds unlocked the phone. Spence handed the phone to Chris Cone, a special agent with the attorney general's office. Cone used "Black Light" software to conduct a "logical acquisition" of the phone to extract data for a more detailed view. While Cone was extracting the data, Reynolds told Spence that he needed to pick up his son from school. Spence told Reynolds that he was free to leave at any time but that officers were "retaining custody" of the house until they completed their search. The search ended at 3:09 p.m. Spence testified that Cone's "cursory examination ... really didn't find any images to be alarmed about," so they returned the phone to Reynolds. Reynolds left and agreed to bring his son's cell phone to the police department for examination later that day.
After a subsequent, more thorough search of the data that was obtained from Reynolds's phone, as well as statements that he made to police, Reynolds was arrested and charged with thirty counts of possessing or viewing images depicting sexually explicit conduct involving a child. See Ark. Code Ann. § 5-27-602 (Repl. 2013). Thereafter, he filed a motion to suppress the evidence from the search and seizure of his cell phone. Reynolds contended that the evidence recovered from the search of his cell phone should be suppressed because (1) the search warrant was not supported by probable cause, (2) the search warrant was overly broad, and (3) the search of his cell phone exceeded the scope of the warrant. He filed a separate motion to suppress his statements to police.
A hearing on the motions was held on July 5, 2017. Spence and Cone testified about the application for and execution of the search warrant. The circuit court took the matter under advisement and allowed the parties to file posthearing briefs. Reynolds argued in his brief that the search warrant was not supported by probable cause because (1) the affidavit failed to establish a nexus between his cell phone and the crime and (2) Spence had failed to attach the images or describe them in the affidavit. He also argued that the warrant was overbroad and an unconstitutional "general warrant" because it failed to describe with particularity the place where the child pornography might be located within the electronic devices. Reynolds asserted that Cone's search of his cell phone exceeded the scope of the search warrant, which authorized only the seizure, not the search, of items described in the warrant. Finally, Reynolds contended that his statements to police should be suppressed as fruit of the poisonous tree.
The circuit court entered an order on September 18, 2017, granting Reynolds's motion to suppress the evidence from his cell phone. The circuit court ruled that the *650 search warrant for the residence was supported by probable cause and rejected Reynolds's argument that the search warrant was overbroad. But the circuit court agreed with Reynolds that the search and seizure of his phone exceeded the scope of the search warrant, finding that there was no nexus between the criminal activities alleged in the search warrant and the cell phone that was improperly seized from Reynolds. The circuit court also granted Reynolds's motion to suppress statements he made to police, ruling that the statements were fruit of the poisonous tree. The State appeals.
II. Law and Analysis
The State contends that the circuit court's decision to suppress the evidence seized from Reynolds's cell phone was based on a "serious error of law." The State asserts that there was a nexus between Reynolds's cell phone and the criminal activity alleged in the search warrant and that the circuit court erred by concluding that the phone was beyond the scope of the warrant.
As a threshold matter, we must determine whether this is a proper State appeal. The State's ability to appeal is limited to the provisions in Rule 3 of the Arkansas Rules of Appellate Procedure-Criminal. E.g. , State v. S.L. , 2012 Ark. 73, 2012 WL 581690. Section (a) of the rule outlines the grounds for State interlocutory appeals in criminal cases. Although Rule 3(a)(1) allows the State to file an interlocutory appeal from a pretrial order granting a motion to suppress seized evidence, we will not consider the appeal unless "the correct and uniform administration of the criminal law" requires review by this court. Ark. R. App. P.-Crim. 3(d). The correct and uniform administration of the criminal law is at issue when the question presented is solely a question of law independent of the facts in the case appealed. See, e.g. , State v. S.G. , 373 Ark. 364, 284 S.W.3d 62 (2008). Consequently, we do not accept an appeal by the State when the circuit court's decision turns on facts unique to the case or involves a mixed question of law and fact. E.g. , State v. Crane , 2014 Ark. 443, 446 S.W.3d 182.
The State asserts that its appeal is permitted by Rule 3 because the issue presented is whether the circuit court erred in its interpretation of the law. According to the State, the "principal error" in this case was the circuit court's conclusion "that the appellee's cell phone automatically fell outside the search warrant-despite the fact that it was at his residence-because the cell phone was on the person of the appellee." The State argues that such a "blanket rule" is contrary to our case law.
The State mischaracterizes the circuit court's ruling. The circuit court did not rule that the cell phone "automatically fell outside the search warrant" because the cell phone was on Reynolds's person. Rather, the circuit court ruled that Reynolds's "arriving on the scene and letting [police] into the home did not automatically make a search of his person, and crucially, the cell phone on his person, subject to the search warrant of the premises." Thus, contrary to the State's assertion, the circuit court did not base its decision on a "blanket rule" requiring it to suppress evidence seized from the cell phone because it was on Reynolds's person. Rather, the circuit court relied on the specific language in the search warrant and the facts surrounding the execution of the warrant. This is demonstrated by the court's order granting the motion to suppress wherein the court explained the basis for its decision.
In its order, the circuit court stated, "Here, we are dealing with a search warrant alleging that criminal activity was occurring at the residence where the IP was *651 registered-this is not an arrest warrant alleging that Reynolds was a suspect in a criminal investigation." The circuit court noted Spence's testimony at the hearing that Reynolds was not a suspect when the search warrant was executed, that he was not under arrest, and that the officers were there only to search the house. The circuit court rejected the State's argument that Reynolds voluntarily produced his cell phone and found that Reynolds unlocked his phone because Spence "threatened to get a judge to sign an order directing him to unlock it." The circuit court stated, "Though the warrant itself was valid, in executing the warrant the Detective overstepped his bounds and extended the search warrant into a personal search of the Defendant." The circuit court analyzed case law and recognized that in some cases, a warrant authorizing a search of the premises could extend to a search of the person. However, the circuit court found that under the circumstances in this case, the warrant did not authorize a search of the person.
In making this determination, the circuit court reviewed unique circumstances and decided mixed questions of law and fact; therefore, we conclude that the correct and uniform administration of the criminal law is not at issue in this case, and we dismiss the appeal. See, e.g. , State v. Sprenger , 2016 Ark. 177, 490 S.W.3d 314 (dismissing State appeal of an order suppressing evidence based on a defective affidavit for search warrant because the decision whether to issue warrant was highly fact-intensive); State v. Threadgill , 2011 Ark. 91, 382 S.W.3d 657 (concluding that the State's challenge of a circuit court's decision to invalidate a search warrant based on a lack of particularity involved facts unique to the case and did not involve the correct and uniform administration of the law); State v. Nichols , 364 Ark. 1, 216 S.W.3d 114 (2005) (dismissing appeal and noting that the State framed its argument in terms of whether the circuit court misinterpreted the law on exigent circumstances, but the resolution of the issue on appeal turned on the circuit court's consideration of the facts surrounding the officer's approach to the house).
Appeal dismissed.
Special Justices Hani W. Hashem and Chad W. Pekron dissent.
Wood and Womack, JJ., not participating.
Special Justice Hani W. Hashem, dissenting.
I respectfully dissent, as I believe the majority has failed to consider an important facet of the standard by which interlocutory appeals of suppression rulings are evaluated by this court. As a threshold matter, the court is required to determine whether or not the State's interlocutory appeal is proper, pursuant to Arkansas Rule of Appellate Procedure-Criminal 3. The court accepts appeals by the State when our holding would be important to the "correct and uniform administration of the criminal law." See , Id. I believe this is exactly such an appeal, as the relevant question-whether an item within the scope of a valid search warrant may be excluded simply because it was on the person of someone within the premises-presents an issue of first impression that will have widespread ramifications and be important to the correct and uniform administration of the criminal law.
As a matter of practice, this court has only taken appeals which are narrow in scope and involve the interpretation of law. See, e.g. , State v. Griffin , 2017 Ark. 67, 513 S.W.3d 828 ; State v. Robinson , 2013 Ark. 425, 430 S.W.3d 105 ; and State v. Thompson , 2010 Ark. 294, 377 S.W.3d 207. This *652 court also has a long-standing history of accepting appeals by the State when a holding would establish precedent that would be important to the correct and uniform administration of justice. State v. Griffin , 2017 Ark. 67, 513 S.W.3d 828 ; State v. Payton , 2015 Ark. 203, 462 S.W.3d 630 ; State v. Myers , 2012 Ark. 453, 2012 WL 6061932, 2012 Ark. LEXIS 486 ; and State v. Earl , 333 Ark. 489, 970 S.W.2d 789 (1998). When, as here, "[t]he material facts surrounding the execution of the warrant are not in dispute ... the question presented is purely a legal one and presents a proper issue for an appeal by the state." Robinson , 2013 Ark. 425, at 4, 430 S.W.3d at 108 (emphasis added).
The majority's decision relies upon a number of cases in which the appeal does not present an issue of interpretation of the criminal rules with widespread ramifications. In those cases, this court has held that it does not involve the correct and uniform administration of law and dismissed the appeal. Similarly, the majority relies upon cases in which a resolution of the issue on appeal turns on facts unique to the case or involves mixed questions of law and fact; because such cases do not require an interpretation of our criminal rules with widespread ramifications, they are not properly appealable by the State. Although the majority correctly cites these precedents, I do not believe they are applicable to the case at hand, because a resolution of the issue here requires no in-depth analysis of the facts, nor does it involve mixed questions of law and fact.
The relevant facts are uncontroverted and set forth in the trial court's pre-trial order of suppression. Law enforcement authorities obtained a broad, but unquestionably valid, warrant to search the Appellee's home for all digital devices, computers, and devices capable of wireless connectivity to the internet. When the authorities initially arrived at Appellee's home to execute the warrant, no one was there. As the officers were discussing how to proceed, the Appellee arrived on the scene and drove his vehicle into the garage, connected to the home. It is undisputed that the garage was a location encompassed within the scope of the warrant. One of the officers met Appellee in the garage as he exited his vehicle. The officer identified himself and explained that he had a warrant to search Appellee's home for the aforementioned devices. The officer asked Appellee if he had a cell phone. The Appellee responded positively and voluntarily reached in his pocket to produce an iPhone (a device that is capable of internet connectivity). The Officer asked for the phone and Appellee handed it to the Officer, without protest or struggle.
Later, upon examination, law enforcement authorities determined that the iPhone contained information showing that it had been utilized for purposes of connecting to the internet to view and upload child pornography. Upon a later questioning, Appellee, when confronted with this information, made certain potentially incriminating statements. Appellee was subsequently charged with thirty (30) counts of distribution, possession, or viewing of matter depicting sexually explicit conduct involving a child. In a pre-trial motion, Appellee sought to suppress the evidence found on the iPhone and his subsequent incriminating statements. The trial court in deciding to suppress the evidence, framed the question for this interlocutory appeal rather nicely. Quoting from the pre-trial order suppressing evidence:
If the phone had been properly seized, then a search would be proper commensurate with that seizure. The proper question is whether the initial seizure was permissible. The Defendant argues *653 that the search of the phone on his person exceeded the scope of the search warrant for the home.
The trial court then decided that although the warrant itself was valid, in executing the warrant, the detective overstepped his bounds and extended the search warrant into a personal search of the Appellee.
To me, the issue presented by this interlocutory appeal is a simple and narrow one: When a person voluntarily brings evidence onto a premises during the execution of a valid search warrant, and that evidence is clearly within the scope of the search warrant, is there an unjustified search of the person, if the police ask the individual to produce the evidence and he voluntarily does so? On these points, the facts are undisputed; there is no claim that the police actually searched Appellee. There can be no doubt that had Appellee left the phone on the console of his vehicle, it would have been subject to seizure; had he laid it on the kitchen counter once he entered the house, it could be validly seized; had he dropped the phone on the floor and the police picked it up, a valid seizure would have occurred. Does the fact of Appellee reaching into his pocket and handing the officer his phone require that the phone be excluded? I am not aware of any precedent that would require such an illogical result.
I believe that this is an issue of first impression and the precedent set by reaching the merits would be important to the correct and uniform administration of the criminal laws. The issue is narrow in scope - does a search warrant for property exclude evidence voluntarily produced by persons on that property during the execution of the warrant? That issue requires no in-depth factual analysis or weighing of the credibility of witnesses; the relevant facts are undisputed. By emphasizing irrelevant factual disputes, the majority unnecessarily complicates the issues before us. I would accept the State's interlocutory appeal and reach the merits.
Special Justice Chad W. Pekron joins in this dissent.

"An IP address is a series of numbers that identifies a computer or other device on a network." Choice Escrow & Land Title, LLC v. BancorpSouth Bank , 754 F.3d 611, 614 n.1 (8th Cir. 2014).