Cite as 2020 Ark. App. 515

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CR–20–11

| | |
|---|---|
| FORREST R. STEWART<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** November 18, 2020<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CR-18-159]<br><br>HONORABLE KIRK JOHNSON, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Chief Judge**

A Miller County jury convicted appellant Forrest Stewart of negligent homicide and sentenced him to serve twenty years in prison and to pay a $15,000 fine. On appeal, he argues that the circuit court (1) abused its discretion in allowing testimony about his prior bad acts; (2) abused its discretion in denying his motion for mistrial based on improper Rule 404(b) testimony; and (3) clearly erred in denying his motion to suppress seized blood samples. We affirm.

I. *Facts*

In the early morning hours of November 2, 2017, appellant was driving northbound on Highway 67 in Hope, Arkansas, when his vehicle traveled approximately seven feet into the southbound lane, hitting the southbound vehicle driven by James Crowe. Mr. Crowe was pronounced dead at the scene. Appellant was trapped in his vehicle and screaming for help. He was cussing, uncooperative, and combative before and after being removed from

his vehicle. He was transported by ambulance and treated for multiple injuries at Wadley Regional Medical Center (Wadley), in Texarkana, Texas, which is located in Bowie County. He arrived at 8:00 a.m., blood was drawn at 8:10 a.m., and the first medication was administered at 8:17 a.m.

Arkansas state troopers Dale Young and Jamie Gravier traveled to Wadley to secure a blood sample from appellant because the accident involved a fatality.[1] Trooper Young called Jeffrey Sams of the Miller County Prosecuting Attorney's Office to request assistance for a letter of preservation for the lab at Wadley until Texas law enforcement could assist in obtaining a search warrant. Trooper Gravier contacted Lance Hall of the Bowie County (Texas) Prosecuting Attorney's Office for assistance in obtaining an affidavit and warrant. Trooper Gravier met with Mr. Hall, who prepared the affidavit and the search warrant, and accompanied him to see a Texas judge, who signed the search warrant. Mr. Hall, along with Trooper Gravier, returned to Wadley, presented the search warrant to the lab, and retrieved previously drawn samples from the lab. Mr. Hall turned the samples over to Trooper Gravier, who turned them over to special agent J.D. Jones at the Arkansas State Police Headquarters in Hope. Trooper Gravier also retrieved Mr. Crowe's blood sample from the funeral home and delivered it to Special Agent Jones. The samples were submitted to the Arkansas State Crime Laboratory, and appellant's blood tested positive for methamphetamine.

---

[1] *See* Ark. Code Ann. § 5-65-208 (Supp. 2019) (providing in part that chemical testing of motor-vehicle operators involved in fatal accidents is required to determine the presence of and percentage of alcohol concentration or the presence of a controlled substance, or both).

On March 7, 2018, appellant was charged with negligent homicide, a Class B felony, arising out of the motor-vehicle accident in which Mr. Crowe was killed. The charge was later amended to add an alternative charge of misdemeanor negligent homicide. The circuit court granted appellant's request for an Act 3 mental evaluation on September 17, 2018. The examiner, Dr. Julia Wood, Ph.D., concluded that at the time of the evaluation, appellant did not lack the capacity to understand the proceedings against him or to effectively assist in his defense. In regard to appellant's mental capacity at the time of the alleged offense, the examiner concluded that appellant had a mental disease but not a mental defect under Ark. Code. Ann. § 5-2-301 (Supp. 2019) and did not lack the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Appellant's mental-disease diagnosis included "Major Depressive Disorder, Recurrent, Severe" and "Meth/Alcohol/Cannabis Use Disorders, Severe."

Appellant filed a motion to suppress the blood collected from him at Wadley, which was denied in a letter order. Following a three-day jury trial in July 2019, appellant was convicted of negligent homicide, a Class B felony, and sentenced to twenty years' imprisonment, along with a $15,000 fine. Appellant timely appealed.

## II. *Prior Bad Acts*

Appellant first argues that the circuit court abused its discretion when it allowed Dr. Wood's testimony about his prior bad acts that had no independent relevance. We review evidentiary rulings under an abuse-of-discretion standard, and we do not reverse absent a manifest abuse of that discretion and a showing of prejudice. *Lacy v. State*, 2020 Ark. App. 224, at 3–4, 599 S.W.3d 661, 664. Abuse of discretion is a high threshold that does not

3

simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.*

Immediately after the State called Dr. Wood to the stand, appellant objected to her testifying on the basis that it could violate his constitutional rights going forward, arguing that his "mental ability to proceed has already been addressed and allowing her to testify would provide no other substantive value[.]" The State responded that at the time of the Act 3 evaluation, Dr. Wood disclosed that a report would be made and submitted to the court, that appellant was waiving any doctor-patient privilege, and that she could be called to testify in court. The State further argued that appellant made statements regarding the ultimate issue in the case and asked that Dr. Wood be allowed to testify regarding his statements about the accident and his activities prior to the accident. The circuit court overruled the objection.

When the State moved to introduce Dr. Wood's curriculum vitae and her report, appellant's counsel objected stating, "Your Honor, objection. Again, relevance, due process rights, equal protection rights, and undue prejudice." The circuit court overruled the objections both times. Appellant's counsel made a relevance objection when Dr. Wood was asked whether appellant had indicated he had prior drug treatment, which was also overruled. The circuit court, however, stopped Dr. Wood from testifying regarding appellant's history of prior drug treatment that was provided to her in records she received. The circuit court also stopped Dr. Wood from reading portions of her report, specifically when she began to read that he had "been in trouble for drugs in the past." The circuit

court subsequently ruled that her report could not be published to the jury. At the end of Dr. Wood's direct examination, appellant moved for a mistrial, which was denied.

Appellant now argues that the circuit court abused its discretion when it allowed Dr. Wood to testify about his prior bad acts, arguing that the testimony was not independently relevant and that it was not more probative than prejudicial under the Rule 403 balancing test. Specifically, appellant argues it was error for Dr. Wood to testify about appellant's drug use dating back to 1968, which he relayed to her during the interview, including that his drug of choice was marijuana but that he sometimes used meth and alcohol. As the State points out, appellant failed to object when this testimony was given. Appellant did not object on the basis of Rule 404 and did not mention Rule 403 or ask the circuit court to conduct a balancing test.

Rule 404(b) (2019) of the Arkansas Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

A circuit court has broad discretion in deciding evidentiary issues, and its decisions will not be reversed absent an abuse of that discretion. *Rounsaville v. State*, 2009 Ark. 479, 346 S.W.3d 289. Even evidence otherwise admissible under Rule 404(b) may be excluded if the danger of unfair prejudice substantially outweighs its probative value. *See* Ark. R. Evid. 403. The balancing of probative value against prejudice under Rule 403 is a matter left to the circuit court's sound discretion. *Davis v. State*, 368 Ark. 401, 246 S.W.3d 862 (2007). The appellate court also reviews decisions to admit evidence over a Rule 403 objection under an abuse-of-discretion standard. *Id.*

The requirement that a defendant in a criminal case make a specific objection at trial in order to preserve the argument on appeal is well established. *Hewitt v. State*, 317 Ark. 362, 365, 877 S.W.2d 926, 928 (1994). A specific objection is one that apprises the court of the particular error to which the party complains so that the circuit court can have the opportunity to correct the error. *Id.* It is also well settled that a party cannot change the basis of an argument on appeal. *Id.*

Although appellant bases his appellate argument primarily on Rule 404(b), he never made an argument to the circuit court based on that rule. Rather, appellant made an argument prior to Dr. Wood's testimony based on a potential violation of his constitutional rights but does not make a constitutional argument on appeal. Because appellant failed to make this argument below, it is not preserved for appeal. *Id.*; *see also Doll v. State*, 2020 Ark. App. 153, 598 S.W.3d 47; *Elliott v. State*, 2012 Ark. App. 126, at 3, 389 S.W.3d 100, 103 (Rule 404(b) argument on appeal not preserved where objections below were generally based on relevancy).

In addition, appellant argues that appellant's prior drug use dating back to 1968, along with his periods of sobriety, were not independently relevant. He also argues that the evidence was more prejudicial than under the Rule 403 balancing test. Appellant, however, did not object when Wood gave this testimony. Therefore, his argument is not preserved for appeal. *Hewitt, supra.*

III. *Mistrial*

For his second point on appeal, appellant argues that the circuit court abused its discretion when it failed to grant a mistrial after prejudicial testimony of appellant's prior

criminal behavior was introduced. Appellant moved for a mistrial at the conclusion of the State's direct examination of Dr. Wood, primarily arguing that testimony about appellant's history of drug use as it related to the accident could severely impact the jury's decision in the case. He also argued that it was unfair to use the information obtained for purposes of the Act 3 hearing against him to show some type of motive or pattern.

A mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by continuing the trial and when it cannot be cured by an instruction to the jury. *Sweet v. State*, 2011 Ark. 20, at 22–23, 370 S.W.3d 510, 525. An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Id.* The circuit court has broad discretion in granting or denying a motion for a mistrial, and this court will not reverse the circuit court's decision absent an abuse of discretion. *Id.* A motion for mistrial must be made at the first opportunity in order for the circuit court to have an opportunity to correct any perceived error before prejudice occurs. *Id.*

Appellant now argues that the testimony that he is a habitual drug offender dating back to 1968 is exactly the type of evidence that would make the jury base its determination of guilt on appellant being a bad person. He suggests that it was offered by the State to show that he was acting in conformity with "his bad drug offending behavior." Appellant argues that it was manifestly prejudicial, and his due-process rights to a fair trial were denied.

In *Sweet*, *supra*, the psychologist who examined Sweet mentioned other charges filed against Sweet indicating "failure to register." Sweet objected but then waited until the conclusion of the psychologist's testimony to move for a mistrial. On appeal, Sweet argued

7

that the psychologist's statement was so egregious that the jury saw him as a sex offender at that point and that the circuit court should have granted a mistrial. The supreme court held that Sweet's motion was untimely, and the circuit court did not err in denying the motion for mistrial. *Sweet*, 2011 Ark. 20, at 23, 370 S.W.3d at 525. The supreme court explained that although defense counsel made a contemporaneous objection and the judge instructed the witness to answer the question, defense counsel failed to move contemporaneously for a mistrial. *Id.*

Here, prior to Wood's testimony, defense counsel objected on the basis that it violated appellant's constitutional rights. Defense counsel also objected to the introduction of Wood's CV and her evaluation report on numerous grounds. In addition, defense counsel made a relevance objection about appellant's prior drug treatment. However, appellant made no objection to Wood's testimony about appellant's report of his prior drug use, nor did he move for a mistrial at that time but instead waited until the conclusion of the State's examination of Dr. Wood. Because appellant's motion was not timely, the circuit court did not err in denying the motion for mistrial.

IV. *Motion to Suppress Blood Samples*

For his final argument, appellant contends that the circuit court clearly erred in denying his motion to suppress his blood samples. We review the denial of a motion to suppress de novo considering the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court and proper deference to the trial court's findings. *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d

8

50 (2007). We defer to the superior position of the circuit court to evaluate the credibility of witnesses at a suppression hearing, and any conflicts in the testimony of witnesses are for the circuit court to resolve. *Parks v. State*, 2020 Ark. App. 267, at 3–4, 599 S.W.3d 382, 384. We reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Id.*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. A BAC test is a search and thus normally requires a warrant. *Mitchell v. Wisconsin*, 139 S. Ct. 2525 (2019). A warrantless search of a person is reasonable only if it falls within a recognized exception to the warrant requirement. *Dortch v. State*, 2018 Ark. 135, 544 S.W.3d 518 (citing *Missouri v. McNeely*, 569 U.S. 141 (2013)). When an officer relies in "good-faith" on a search warrant that is later determined to be unsupported by probable cause, any evidence discovered by reason of that search will not be suppressed. *Crain v. State*, 78 Ark. App. 153, 157, 79 S.W.3d 406, 409 (2002) (citing *United States v. Leon*, 468 U.S. 897 (1984)).

Appellant filed a motion to suppress the evidence obtained though the search warrant on the basis that the "search" or collection of his blood was done in contravention of the Fourth Amendment and other applicable law. Specifically, he contended that there was not probable cause for the warrant; no Texas officers were involved in the investigation of the Arkansas accident; no Arkansas officer appeared in a court in either state; the warrant authorized the seizure of one vial of blood rather than the four vials of blood and two vials of urine obtained; the warrant was not returned within three days of its issuance; the blood

9

was not independently drawn per the search warrant; the blood collected had already been drawn before the issuance of the warrant; and appellant never gave consent to law enforcement to obtain his blood or urine. He argued that the warrant did not comply with *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), and *Dortch*, 2018 Ark. 135, 544 S.W.3d 518, and suggested that a second blood draw was required as opposed to obtaining previously drawn blood samples. The circuit court denied the motion in a letter order.

On appeal, appellant argues that the warrant was faulty because (1) the crime occurred in Arkansas, not Texas; (2) the warrant was not properly returned; (3) the blood was collected by the hospital before the warrant was issued; and (4) "no separate independent blood draw occurred in line with the search warrant." Aside from making bare assertions, appellant has not developed his argument for the first three allegations regarding the warrant. We do not address arguments that are not supported by authority or convincing argument. *Hathcock v. State*, 357 Ark. 563, 575, 182 S.W.3d 152, 160 (2004).

For his fourth assertion, appellant contends that the circuit court's decision is clearly erroneous because *Birchfield* and *Dortch* "make it clear, a blood draw per the search warrant has to occur, not just the collection of blood already in existence that had been drawn earlier having nothing to do with the search warrant." We disagree.

Neither *Birchfield* nor *Dortch* involved situations where blood previously drawn for medical purposes could be obtained without the need for a second draw, and neither addressed whether a search warrant is required to obtain a blood sample already taken for purposes of medical treatment. Rather, *Birchfield* addressed the issue of "whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for

10

refusing to take a warrantless test measuring the alcohol in their bloodstream." 136 S. Ct. at 2172. The Court concluded that the Fourth Amendment permits warrantless breath tests incident to arrest for drunk driving but does not permit warrantless blood tests incident to arrest for drunk driving. *Id*. at 2184. The Court reasoned that a breath test is a permissible search incident to arrest because it does not implicate significant privacy concerns. *Id*. To the contrary, the Court explained that a warrantless blood test could not be justified as a search incident to arrest, explaining that unlike breath tests, blood tests require an intrusive piercing of the skin and "places in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple BAC reading." *Id*. at 2178. Additionally, the Court concluded "that motorists cannot be deemed to have consented to submit to a blood test [by virtue of an implied-consent statute] on pain of committing a criminal offense." *Id*. at 2186.

Our supreme court in *Dortch* addressed the issue of whether the Arkansas implied-consent laws impose criminal penalties upon persons who refuse to submit to a blood test and violate the Fourth Amendment. *Dortch*, 2018 Ark. 135, at 15, 544 S.W.3d at 527. On the basis of *Birchfield*, our supreme court held that the refusal to submit to a blood test pursuant to Arkansas Code Annotated section 5-65-202 would result in the imposition of criminal penalties and that as applied to Dortch, section 5-65-202 was unconstitutional. *Dortch*, 2018 Ark. 135, at 17, 544 S.W.3d at 528. Both Ark. Code Ann. §§ 5-65-202 and 5-65-208 were amended in 2017 to require a warrant to test a person's blood based on probable cause that the person was operating a motor vehicle while intoxicated.

Arkansas Code Annotated section 5-65-208(a) provides:

(a) When the driver of a motor vehicle or operator of a motorboat on the waters of this state is involved in an accident resulting in loss of human life, when there is reason to believe death may result, or when a person sustains serious physical injury, a chemical test of the driver's or operator's breath, saliva, or urine shall be administered to the driver or operator, even if he or she is fatally injured, to determine the presence of and percentage of alcohol concentration or the presence of a controlled substance, or both, in the driver's or operator's body.

A test of a person's blood pursuant to Ark. Code Ann. § 5-65-208 requires a warrant. *See* Ark. Code Ann. § 5-65-208(d).

Here, the Arkansas State Police sought the assistance of the Bowie County, Texas, prosecutor's office to obtain a search warrant for appellant's blood samples located at Wadley in Texas. The affidavit provided that a fatal motor-vehicle accident occurred in Arkansas; the investigation of the accident determined that appellant was driving approximately five feet in the wrong lane of traffic striking the vehicle driven by Mr. Crowe; appellant was transported to Wadley in Texarkana, Texas; during the investigation it was discovered from members of appellant's family that he was under the influence of numerous prescribed medications; Wadley secured vials of appellant's blood during the regular course of business; appellant was transferred to surgery for broken bones; and the Arkansas State Police, along with the Miller County Prosecutor's Office, presented a preservation letter to preserve the extra blood for analysis. The warrant was signed by a Texas judge; the warrant provided that probable cause existed and directed the affiant to seize from Wadley one vial of blood taken from Forrest Stewart "since the arrival of Forrest Stewart until the issuance" of the search warrant.

12

Appellant contends that the circuit court's order denying his motion to suppress contains a legal error. The circuit court's letter order denying the motion to suppress provides in part:

> While this exact legal and factual issue has not been decided by the Arkansas Supreme Court, the vast majority of states have concluded that a defendant does not have an expectation of privacy once a blood has been drawn for medical purposes. *See Rodriquez v. State of Texas*, 469 S.W.3d 626 (2015); *State of Texas v. Hardy*, 963 S.W.2d 516 (1997); *Michigan v. Perlos et al*, 436 Mich. 305, 462 N.W.2d 310 (1990); *Commonwealth of Pennsylvania v. West*, 2003 PA Super 380, 834 A.2d 625 (2003); *Hannoy v. State of Indiana*, 189 N.E.2d 977 (2003); *State of New Hampshire v. Davis*, 161 N.H. 292, 12 A.3d 1271 (2010) and *State of Rhode Island v. Guido*, 698 A.2d 729. There has been no testimony nor implication that the blood samples taken by the hospital were prompted or motivated by state action. The evidence shows clearly that a serious motor vehicle wreck had occurred and that the defendant was sent by ambulance for treatment at the local hospital and a valid search warrant based on probable cause was issued by a judge.

We recognize that appellant takes issue with the circuit court's citation to the above Texas cases. He contends, however, that in *State v. Martinez*, 570 S.W.3d 278 (Tex. Crim. App. 2019), the Texas Court of Criminal Appeals held that "there is a Fourth Amendment privacy interest in blood that has already been drawn for medical purposes." 570 S.W.3d at 292. The court in *Martinez* held that the State's warrantless testing of the blood was a Fourth Amendment search separate and apart from the seizure of the blood by the State. *Id*. Because no exception to the warrant requirement applied, the State was required to obtain a warrant before testing Martinez's blood. *Id*.

The principal difference in the case before us is that it involved a search warrant. The search warrant directed law enforcement to seize the previously drawn blood sample and to transfer it to the Arkansas State Police for submission to the state crime lab for analysis. Appellant fails to cite any language in *Birchfield* or *Dortch* that supports his argument that a

second blood draw was required. It defies common sense to have a second blood draw under these facts because it would have been after appellant had been treated for his injuries and would have required a second "intrusive piercing of the skin." In conclusion, we affirm the circuit court's denial of appellant's motion to suppress.

Affirmed.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Thompson Law Firm, PLLC*, by: *Theodis N. Thompson, Jr.*; and *Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.