Cite as 2024 Ark. App. 607

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-23-833

| | | |
|---|---|---|
| JAMES NOWLIN | | Opinion Delivered December 11, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE LITTLE RIVER COUNTY CIRCUIT COURT [NO. 41CR-21-136] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE BRYAN CHESSHIR, |
| | APPELLEE | JUDGE |
| | | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant James Nowlin appeals his conviction by a Little River County jury on charges of negligent homicide while intoxicated, in violation of Arkansas Code Annotated section 5-10-105(a)(1)(A) (Repl. 2013), a Class B felony; and driving while intoxicated, in violation of Arkansas Code Annotated section 5-65-103 (Repl. 2016), an unclassified misdemeanor. He argues that (1) the search warrant was defective, and the resulting seizure of the blood sample violated his Fourth Amendment Rights; and (2) the circuit court abused its discretion by admitting the blood-alcohol-test results into evidence. We affirm.

I. *Facts and Procedural History*

Around 9:00 p.m. on September 2, 2021, a pickup truck driven by Nowlin crashed into the rear of a vehicle driven by Melba Yvonne Rose on Highway 71 in Ashdown, Arkansas. Ms. Rose had just pulled out of McDonald's parking lot when the accident

occurred. Her vehicle spun to the right, and she was ejected. Ms. Rose's daughter, Michelle Woods, who pulled into the McDonald's just minutes after the accident, realized her mother's vehicle was involved and rushed to her side. Ms. Woods stayed with her mother until paramedics arrived, at which time Ms. Rose was pronounced deceased on the scene.

Nowlin's vehicle flipped multiple times into a nearby parking lot and landed upside down on a parked car in which a father was feeding his five-month-old son. The father sustained minor cuts and burns, but the child was unharmed; both were able to safely exit the vehicle.

Nowlin climbed out of his truck on his own but was subsequently airlifted to Ochsner LSU Hospital in Shreveport, Louisiana. The hospital took blood and urine samples during his course of treatment. He sustained injuries but survived and was discharged a few days later in stable condition.

Witnesses reported that Nowlin was belligerent with police officers and that his breath smelled of alcohol. One of the officers at the scene reported that Nowlin's eyes were bloodshot and watery, his speech was slurred, and he stumbled around while walking; however, no field sobriety tests were performed on Nowlin.

One week after the accident, the Arkansas State Police reached out to Louisiana police to obtain a warrant for Nowlin's medical records. The application for a search warrant was filed by a Louisiana officer citing the suspected violation of Louisiana law. The Honorable John Mosely of the 1st Judicial District of Caddo Parish, Louisiana, granted the search warrant, which also cited the suspected violation of Louisiana law.

Subsequently, the search warrant was served on Ochsner LSU Hospital. The hospital released Nowlin's medical records to the Arkansas State Police along with a vial of blood and a urine sample. The vial of blood was labeled "Unknown Potomac 15"[1] and listed a date of birth of September 2, 1967. In addition, the vial of blood was labeled with a series of numbers, including the number 13319357, which is the number the hospital had assigned to Nowlin as his medical-record number. The vial of blood was transported to the Arkansas Crime Laboratory for testing, and the results showed a blood-alcohol content of 0.172.

Before trial, on October 17, 2022, Nowlin moved to suppress the search warrant. The circuit court held a hearing on Nowlin's motion the following day. There was no testimony taken, but the search-warrant affidavit and search warrant were introduced as evidence. The affidavit stated that there was probable cause that Ochsner LSU Hospital in Shreveport, Louisiana, possessed evidence of a violation of La. Stat. Ann. § 14:32.1—the Louisiana criminal statute for vehicular homicide. In support, the affidavit stated that Nowlin was speeding when he caused a fatal crash in Ashdown, Arkansas, on September 2, 2021, and that he was airlifted to Ochsner LSU Hospital immediately afterward. The affidavit also alleged that Nowlin "had a strong smell of intoxicates coming from his person and appeared to be intoxicated" after the crash and explained that the hospital was "in possession of items/evidence that will most likely reveal medical and/or physical condition of Nowlin[.]"

---

[1]The name listed on the labels of the vials of blood and urine was "Unknown Potomac 15." The hospital lab manager, Bridget Davis, testified at trial that, when an unknown patient is brought to the emergency department, he or she is assigned an alias until the patient's identity is confirmed.

The application for the search warrant as well as the search warrant that was issued described the following items to be seized:

> Hospital and/or medical records, including patient's records, notes by medical personnel, x-ray readings and reports; laboratory records and reports; all tests of any type or character and the results of all reports thereof; patient disputes or complaints, photographs and videotapes; and any records pertaining to medical care, history and physical examination, condition, treatment, diagnosis, prognosis, consultation, progress notes, etiology that was associated with, obtained, initiated and/or generated as a result of the medical examination, evaluation, diagnosis and/or treatment of patient James Franklin Nowlin, a white male, born on May 11, 1966, possibly residing at the address of 4519 McBride Road in Texarkana, Arkansas 71856; relevant to and for the medical services provided beginning on or about September 2, 2021.

Nowlin argued that his medical records and blood sample were "obtained illegally" in violation of the Fourth Amendment because the search-warrant affidavit incorrectly stated that there was probable cause to believe that he had violated a Louisiana criminal statute instead of an Arkansas statute and contained "false or misleading information" because it listed the Louisiana criminal statute for vehicular homicide instead of the Arkansas statute for negligent homicide. He maintained that there was no evidence that he committed a crime in Louisiana and insisted that the search-warrant application first had to be presented to an Arkansas judge. His counsel argued, "Then the search warrant [would be] taken to Louisiana and presented to a Louisiana judge who thereby issues a Louisiana warrant because the Arkansas search warrant [would be] good for Arkansas." Counsel acknowledged that he had no statute to support his argument that a warrant issued in Arkansas was required before obtaining a warrant in Louisiana.

The circuit court denied Nowlin's motion to suppress, concluding that there was no requirement that an Arkansas judge first issue a search warrant before a Louisiana judge could issue a search warrant to obtain evidence that was in Louisiana. Second, the circuit court found that all the facts supporting the warrant application made it "very clear" that Ochsner LSU Hospital may have evidence that Nowlin committed negligent homicide in Arkansas, even though the affidavit incorrectly listed the Louisiana statute. It explained that "[a]ny magistrate, whether in Louisiana or Arkansas, in reading this application would understand that this was an accident that occurred in Arkansas and not in Louisiana[.]"

The circuit court did note that it would revisit the matter if Nowlin was able to obtain a ruling from a Louisiana court that the search warrant was invalid under Louisiana law. Nowlin was unable to obtain such ruling, but he filed a motion for reconsideration of his motion to suppress, raising no new arguments. That motion for reconsideration was denied by operation of law.

At the jury trial held on June 12–13, 2023, Nowlin objected to the admission of the results of the lab tests on the blood sample because the date of birth listed on the vial (September 2, 1967) was different from Nowlin's date of birth (May 11, 1966). The State could neither identify nor locate the person who allegedly drew Nowlin's blood, claiming that the person was a "traveling nurse" who could not be located.

The hospital lab manager, Bridget Davis, testified and acknowledged that she could not be certain that the blood sample in question was the same one she collected from the patient identified as "Unknown Potomac 15." But Ms. Davis also testified regarding the

5

retrieval of Nowlin's samples from the hospital's laboratory, noting that she followed the normal policy and procedures by retrieving Nowlin's urine and blood samples from the hospital, verifying that those samples belonged to Nowlin, and then giving those samples to police in response to the search warrant. Ms. Davis testified that Nowlin had been assigned the medical-record number 1331935711 when he was admitted into the hospital and that the number matched the numbers on the vials of blood and urine that she provided to police.

During the direct examination of Kristen Mauldin, a toxicologist at the Arkansas State Crime Laboratory, Nowlin raised a chain-of-custody objection to the report containing the results from the blood-alcohol test. The circuit court overruled the objection as "premature" because the State had not yet attempted to introduce it.

Arkansas State Trooper Joshua Broughton testified that he faxed a preservation letter to Ochsner LSU Hospital the morning after the wreck and followed up on September 7 as part of standard protocol to preserve any previously drawn samples from Nowlin and to facilitate the retrieval of related records or documents.

The State then re-called Ms. Mauldin, who testified without objection, that the blood-alcohol-test "results were 0.172-gram percent ethanol[,]" which was "about two times the legal limit." Later, when the State sought to introduce the crime-laboratory report showing the blood-alcohol-test results, Nowlin "renew[ed]" his chain-of-custody argument. The circuit court overruled the objection, concluding that there was "reasonable certainty the specimen

6

tested was that of the accused" and that there was no evidence that the specimen had been tampered with.

Ms. Mauldin then testified on cross-examination that the date of birth listed on the crime-laboratory submission sheet, which was taken from the vials of blood and urine samples, was September 2, 1967, and she acknowledged that Nowlin's date of birth is May 11, 1966. After her testimony, Nowlin asked "that that be stricken from the evidence." He argued that the evidence was "not reliable" because they "don't know from whom or when this vial of blood came." The circuit court denied this request.

The following day, Nowlin again raised a chain-of-custody argument regarding the blood sample. Counsel argued that the State had not presented sufficient evidence that the blood sample that was tested was Nowlin's because Ms. Davis testified that she was able to determine that the blood and urine samples belonged to him on the basis of the date of birth—which was inaccurate—and medical-record numbers that were listed on the vials of blood and urine. The circuit court overruled his objection, finding that the medical-record number on the vials of blood and urine samples sufficiently identified the samples as Nowlin's despite the incorrect date of birth also listed on the vials.

The jury convicted Nowlin on both charges, and he was sentenced to one year in the county jail, a fine of $1,000 for the driving-while-intoxicated conviction, and eighteen years in the Arkansas Division of Correction for the negligent-homicide conviction, to run concurrently, pursuant to a sentencing order filed on June 23. Nowlin filed a timely notice of appeal on June 29.

II. *Discussion*

A. Search Warrant and Seizure of Blood Sample

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Hinson v. State*, 2016 Ark. App. 166, at 5, 485 S.W.3d 725, 728. This court will reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Stewart v. State*, 2020 Ark. App. 515, at 9, 611 S.W.3d 720, 726. "A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after review of the entire evidence, is left with the definite and firm conviction that a mistake has been made." *Walker v. State*, 2023 Ark. App. 295, at 8, 669 S.W.3d 243, 251.

The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]" U.S. Const. amend. 4. A blood-alcohol-content (BAC) test is a search and thus normally requires a warrant supported by probable cause. *Stewart*, *supra*. To be valid, a search warrant must be based on an affidavit that provides probable cause to believe that the search will lead to evidence of a crime. *Yancey v. State*, 345 Ark. 103, 117, 44 S.W.3d 315, 324 (2001). A delay in applying for a search warrant can also diminish probable cause, but the delay is "not considered separately, [and] the length of the delay is considered together with

8

the nature of the unlawful activity and in the light of common sense." *Gilbert v. State*, 341 Ark. 601, 605, 19 S.W.3d 595, 598 (2000) (citing *White v. State*, 47 Ark. App. 127, 134, 886 S.W.2d 876, 881 (1994)). Evidence obtained with an invalid search warrant must be suppressed unless the State demonstrates its officers acted in good-faith reliance on the warrant. *See McFarland v. State*, 284 Ark. 533, 684 S.W.2d 233 (1985); *see also Hampton v. State*, 90 Ark. App. 174, 204 S.W.3d 572 (2005).

Arkansas Rule of Criminal Procedure 13.2(b)(iv) (2023) requires a search warrant to "describe with particularity" the persons or things constituting the object of the search and authorized to be seized. A search that extends beyond the limits prescribed in the warrant violates the Fourth Amendment, and the evidence obtained by the search is subject to suppression. *See State v. Reynolds*, 2019 Ark. 154, 574 S.W.3d 647.

In this case, authorities waited for seven days before applying for a search warrant following the September 2, 2021 accident. The affidavit in support of the application stated that the hospital possessed records that could constitute evidence of a violation of a Louisiana statute. The application did not specifically request a warrant to seize physical tissue samples held by the hospital, and the subsequently issued warrant likewise did not specifically authorize the seizure of physical tissue samples held by the hospital.

Nowlin argues that the circuit court erred by denying his motion to suppress the results of the lab tests performed on his blood. He maintains that under the facts stated in the affidavit, it was clear that the Louisiana criminal statute identified in the application could not have been violated because the accident occurred in Arkansas, and all identified

parties were Arkansas residents. He cites 73 Am. Jur. 2d *Statutes* § 236 (incorrectly cited as §

359) as authority for the premise that state criminal statutes are presumed to have no

extraterritorial effect; therefore, Nowlin maintains there was no probable cause to believe

that he had violated the Louisiana criminal statute as alleged in the affidavit and no basis on

which to have issued the search warrant.

Moreover, Nowlin argues that the seizure of the blood sample exceeded the scope of

the search warrant. The warrant authorized only the seizure of "records" and "tests" held by

the hospital. Prior to the application for the search warrant, Arkansas State Trooper

Broughton faxed a letter to the hospital demanding the preservation of certain evidence. A

blood sample was collected by an unidentified traveling nurse and preserved by the hospital

lab manager, Ms. Davis, in response to that letter. However, even though the search warrant

was limited to records and tests only, law enforcement seized the vial of blood from the

hospital. Nowlin, citing *United States v. Sedaghaly*, 728 F.3d 885 (9th Cir. 2013), asserts that

the seizure of the blood sample exceeded the scope of the search warrant, and accordingly,

the results from the blood-alcohol test should have been suppressed because no additional

warrant was obtained for the specific seizure of the blood sample.  He notes the vial of blood

is physical human tissue and not a "record" or a "test," and there was no evidence or

argument offered by the State before the circuit court that law enforcement acted under a

good-faith belief that the search warrant authorized the seizure of the blood sample.

Finally, Nowlin argues that the one-week delay in applying for the search warrant

further renders the seizure of the blood sample unreasonable. He points out that, unlike

some cases in which the facts constituting probable cause are evolving over time, this case involved a motor vehicle accident and that the authorities had all the facts necessary to apply for a search warrant on the night the accident occurred. Nowlin urges that the seven-day delay further diminished any probable cause law enforcement could have had for the issuance of a search warrant.

For these reasons, Nowlin submits that the evidence related to the blood sample should have been suppressed as the fruit of an unlawful search and seizure. He asks this court to reverse his convictions and remand the case to the circuit court for a new trial without the tainted evidence.

We disagree. Regarding Nowlin's assertions that (1) because the scope of the warrant did not provide for the seizure of "physical tissue samples[,]"the seizure of his blood sample "exceeded the scope of the search warrant"; and (2) the one-week delay between the car wreck and the application for a search warrant was "unreasonable" and "further diminished any probable cause the authorities could have had for a warrant," we hold that these arguments are not preserved for our review.

An issue must be raised to the circuit court to be preserved for appellate review. *Hamilton v. State*, 2020 Ark. App. 482, at 9, 612 S.W.3d 185, 190. And an appellant is bound on appeal by the scope and nature of the objections and arguments presented at trial. *Hannah v. State*, 2019 Ark. App. 252, at 3, 576 S.W.3d 482, 484. Our review of the record before us indicates that Nowlin never asserted before the circuit court that the seizure of the blood sample exceeded the scope of the warrant or that the one-week delay between the crash and

11

the issuance of the warrant rendered it invalid. Because neither of these arguments was either developed below or ruled on by the circuit court, they are not preserved for our review. *See Harding v. State*, 2024 Ark. App. 560, at 8, __ S.W.3d __, __.

Regarding Nowlin's remaining argument that was preserved—that the search-warrant affidavit incorrectly listed a Louisiana criminal statute, which invalidated it—we disagree and hold that the circuit court did not commit reversible error in denying Nowlin's motion to suppress. Probable cause must be established by an affidavit or recorded testimony showing that "the things subject to seizure will be found in the particular place[.]" *Yancey*, 345 Ark. at 110, 44 S.W.3d at 319. The affidavit, however, does not have to be "completely without inaccuracy[.]" *See Magness v. State*, 2012 Ark. App. 609, at 11–12, 424 S.W.3d 395, 403. "[A]s long as the inaccuracies are relatively minor when viewed in the context of the totality of the circumstances," this court will uphold the validity of a search warrant. *Id.* at 12, 424 S.W.3d at 403. Further, "[h]ighly technical attacks on search warrants are not favored because the success of such attacks could discourage law-enforcement officers from utilizing search warrants." *Id.* at 11, 424 S.W.3d at 403.

In *Magness*, we addressed a similar challenge to a minor inaccuracy in a search-warrant affidavit. There, Magness argued that the search-warrant affidavit's reference to the wrong statute rendered the warrant defective. *Id.* We disagreed, holding that, after "reading the affidavit and warrant as a whole, it [was] abundantly clear that the citation to section 5-64-401 was a minor error that did not render the warrant defective." *Id.* at 12, 424 S.W.3d at 403. We explained that the affidavit and warrant stated "that the police were searching for

items that might contain DNA linked to an alleged sexual assault" and that there was "no possibility that the warrant caused any confusion for either the judge who signed it or the officers who executed it regarding what could be seized." *Id.*

Similarly, here, the reference to Louisiana Statute Annotated section 14:32.1—instead of Arkansas Code Annotated section 5-10-105—was a minor error that did not affect the validity of the warrant. The affidavit clearly stated Nowlin was speeding when he caused a fatal accident in Ashdown, Arkansas, and that he was subsequently transported to Ochsner LSU Hospital in Shreveport, Louisiana. It explained that witnesses observed that Nowlin smelled and appeared intoxicated after the accident. The affidavit, when viewed as a whole, showed there was probable cause to believe Ochsner LSU Hospital possessed evidence concerning a fatal accident Nowlin caused in Arkansas while intoxicated, even though it incorrectly listed the Louisiana statute. Furthermore, the elements of the offense for vehicular homicide in Louisiana are similar to those for negligent homicide in Arkansas. *Compare* La. Stat. Ann. § 14:32.1 *with* Ark. Code Ann. § 5-10-105(a)(1).

As the circuit court recognized, there was simply no way that the Louisiana judge who signed the warrant was misled by the facts constituting probable cause in the affidavit. It was clear in the affidavit that Ochsner LSU Hospital possessed evidence of a crime that took place in Arkansas. Indeed, the affidavit specifically stated that the fatal wreck occurred in "Ashdown, Arkansas[.]" Accordingly, we hold that the minor discrepancy in the search-warrant affidavit did not render the warrant invalid.

B. Admission of the Blood-Alcohol-Test Results

This court will not reverse on an evidentiary claim absent a showing of prejudice. *Graham v. State*, 2022 Ark. App. 502, at 12, 655 S.W.3d 918, 925–26. "Evidence that is merely cumulative or repetitious of other evidence admitted without objection cannot be claimed to be prejudicial." *Burns v. State*, 2024 Ark. App. 329, at 23, 690 S.W.3d 133, 149.

Nowlin argues that the circuit court abused its discretion by admitting the blood-alcohol-test results into evidence because the blood sample could not be properly authenticated as belonging to him. Arkansas courts require evidence establishing a chain of custody for seized items to prevent the introduction of evidence that is inauthentic. *See Crisco v. State*, 328 Ark. 388, 391, 943 S.W.2d 582, 584 (1997); *see also* Ark. R. Evid. 901 (2023). In particular, "proof of the chain of custody for interchangeable items like drugs or blood needs to be more conclusive." *Laswell v. State*, 2012 Ark. 201, at 15, 404 S.W.3d 818, 827–28. A circuit court's decision to admit evidence over an objection based on authenticity is reviewed by an appellate court under an abuse-of-discretion standard. *Winters v. State*, 301 Ark. 127, 133, 782 S.W.2d 566, 569–70 (1990); *see also Chatmon v. State*, 2015 Ark. 28, at 10, 467 S.W.3d 731, 737.

Nowlin submits that in this case, the chain of custody for the blood-sample vial was broken at the very beginning of the process. The State was unable to identify the person at the hospital who allegedly drew Nowlin's blood. Noting that the person was a "traveling nurse" who could not be located or identified, the State nonetheless sought to authenticate

the blood sample with a medical-records affidavit and the testimony of Ms. Davis, who retrieved the blood sample in response to the police's preservation letter.

Nowlin maintains that the medical-records affidavit was simply a ploy to cover up the State's inability to establish a proper chain of custody. He notes that Ms. Davis admitted she could not be sure that the sample offered at trial was the same one she determined belonged to "Unknown Potomac 15," an alias she testified corresponded to Nowlin. She further acknowledged that she did not know how many blood samples had been drawn from unknown persons, or "Unknown Potomacs," from the time Nowlin was admitted to the hospital until the time the search warrant was executed. Nowlin argues that, without being able to identify the person who allegedly drew his blood or obtaining a witness who could definitively identify the sample introduced at trial as the one that was allegedly drawn from him, the State failed to prove the necessary chain of custody to authenticate the sample.

Nowlin further challenges the authenticity of the blood sample, claiming it is further undermined because the blood vial was labeled with a date of birth of September 2, 1967, which differs from his actual date of birth—May 11, 1966. Nowlin submits that this discrepancy calls into question whether the blood in the seized vial had been drawn from him. He maintains that the fact that the vial also contained a series of numbers, including the number that the hospital assigned to Nowlin as his medical record number (13319357), only further confuses matters. He contends that the evidence does not conclusively establish a reliable chain of custody that is required to authenticate interchangeable evidence such as a blood sample.

Nowlin claims the circuit court abused its discretion by admitting the evidence and in disregarding facts that gave rise to serious doubts about its authenticity. Nowlin argues that being the most direct and compelling evidence of intoxication, the admission of the blood-alcohol-test results had a highly prejudicial effect on the outcome of his trial; accordingly, he asks that we reverse his convictions and remand the case for a new trial.

We disagree and hold that Nowlin's argument that Ms. Davis's testimony was insufficient to establish that the blood tested was his blood because the vial of blood did not have his name or correct date of birth on it is not preserved; alternatively, Nowlin suffered no prejudice. To preserve an argument for appellate review, absent a ruling on a pretrial motion in limine, a defendant must object to the admission of evidence at the first opportunity and then renew his objection each time the evidence is elicited. *Morgan v. State*, 2021 Ark. App. 344, at 8, 632 S.W.3d 759, 764. Otherwise, the argument is waived. *Scarbrough v. State*, 2024 Ark. 71, at 15, 687 S.W.3d 557, 567.

Nowlin first mentioned a possible chain-of-custody issue relating to the blood sample when Ms. Davis initially testified, but the circuit court did not rule on the issue. Then, during Ms. Mauldin's testimony, Nowlin objected to the admission of the crime-lab report, arguing that the State had not proved chain of custody for the blood sample tested. The circuit court overruled his objection as "premature" because the State had not yet attempted to introduce the blood-alcohol-test results.

Later, when the State re-called Ms. Mauldin as a witness, she testified that the blood-alcohol-test "results were 0.172-gram percent ethanol." Nowlin did not object to this

testimony; rather, he "renew[ed]" his chain-of-custody objection when the State sought to introduce the crime-lab report showing the blood-alcohol-test results. Nowlin's failure to object to Ms. Mauldin's specific testimony regarding the test results bars his chain-of-custody argument for appeal. Accordingly, we affirm.

Affirmed.

THYER and HIXSON, JJ., agree.

*Ben Motal*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.